GTE SPRINT COMMUNICATIONS CORPORA-
TION, now known as U.S. Sprint Communications
Company, a Delaware corp., Plaintiff-Appellant,

v.

WISCONSIN BELL, INC., Defendant-Respondent,

STATE of Wisconsin, Intervenor-Respondent.

Supreme Court

*No. 89-0272. Argued March 7, 1990.—Decided May 15, 1990.*

(Also reported in 454 N.W.2d 797.)

For the plaintiff-appellant there were briefs (in court of appeals) by *Robert V. Abendroth, Peter L. Gardon, Whyte & Hirschboeck,* Madison and *Craig Smith* and *U.S. Sprint,* Kansas City, Missouri, and oral argument by *Peter L. Gardon.*

For the defendant-respondent there was a brief (in court of appeals) by *Michael A. Greene,* Milwaukee, and oral argument by *Michael A. Greene.*

For the intervenor-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general,

with whom on the brief (in court of appeals) was *Donald J. Hanaway,* attorney general.

DAY, J. This case is before this court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. 1985-86. GTE Sprint Communications Corporation, now U.S. Sprint Communications Company, appeals a judgment of the circuit court for Milwaukee county, the Honorable Laurence C. Gram, Jr., Judge, which denied U.S. Sprint's motion for summary judgment seeking to have declared unconstitutional the retail sales tax imposed upon the transfer of origination and termination services ("access services"), pursuant to secs. 77.51(14)(m) and 77.52(2)(a)4, Stats., (1985-86). The first question is whether the tax violates the equal protection clauses of either Article I, Section I of the Wisconsin Constitution or the Fourteenth Amendment, Section I of the United States Constitution. If not, the second question is whether the tax violates the commerce clause of Article I, Section 8 of the United States Constitution. We conclude the tax violates the constitutional guarantee of equal protection of the laws and, accordingly, we reverse. We therefore do not reach the commerce clause issue.

This case has followed a varied and complicated path in coming before this court. On July 22, 1986, Wisconsin Bell, Inc. filed a complaint in the circuit court for Milwaukee county seeking to recover from U.S. Sprint, pursuant to sec. 77.52(3), Stats., (1985-86) monies it had paid to the Wisconsin Department of Revenue ("Department") in compliance with the tax. U.S. Sprint removed the action to a federal district court. In answering the complaint, U.S. Sprint among its affirmative defenses challenged the constitutionality of the tax on equal protection and commerce clause grounds. The State inter-

187

vened pursuant to sec. 806.04(11), Stats., 1985–86 and moved to strike the constitutional challenges on the basis the federal district court lacked subject matter jurisdiction by virtue of the Tax Injunction Act, 28 U.S.C. sec. 1341. The federal district court granted the State's motion and held that with respect to U.S. Sprint's constitutional challenges, the proper venue was in state court. U.S. Sprint then initiated this action on June 15, 1987, in the circuit court for Milwaukee county seeking declaratory relief, and the federal case was stayed pending resolution of the state action. Wisconsin Bell answered on June 30, 1987, neither admitting nor denying the constitutionality of the tax, but asserting a counterclaim against U.S. Sprint for reimbursement of the monies it had paid to the Department. The State again intervened and answered U.S. Sprint's complaint by denying that the tax was unconstitutional. U.S. Sprint and Wisconsin Bell subsequently filed motions for summary judgment. On November 9, 1988, the circuit court denied U.S. Sprint's motion and granted the motion by Wisconsin Bell. Judgment in favor of Wisconsin Bell was entered on January 30, 1989. U.S. Sprint appealed and the circuit court stayed enforcement of the judgment pending resolution of the appeal. On September 20, 1989, the court of appeals certified the appeal to this court, and on October 10, 1989, we accepted certification.

The facts are rather complicated as well. Wisconsin Bell was once a subsidiary of American Telephone and Telegraph Company, which by virtue of the modification of final judgment in *United States v. American Telephone and Telegraph Co.,* 552 F. Supp. 131 (D.C. 1982), *aff'd. sub. nom., Maryland v. United States,* 460 U.S. 1001 (1983), was ordered to divest itself of its Bell Operating Company subsidiaries on or before January 1,

1984. From that date forward, the former subsidiaries were limited to providing specific services within designated areas. The areas were defined by dividing the United States into 161 geographical sections, each termed a "local access and transport area" ("LATA"). The services each subsidiary, now known as local exchange carriers, could provide were limited to telecommunications within a particular LATA and access services to other telecommunications providers. Wisconsin was divided into four LATAs. *See also* sec. 76.38(1)(bd), Stats. 1985–86. With the exception of twelve smaller communities, all communities in Wisconsin are within those four LATAs. The twelve excepted communities are included in LATAs of other states. None of the Wisconsin LATAs, however, crosses state lines. In addition, each LATA in Wisconsin is comprised of numerous local telecommunications exchange areas ("exchange"), which are operated by local exchange carriers. *See* sec. 76.38(1)(d). There are a total of 593 exchanges in Wisconsin, many of which are operated by Wisconsin Bell, one of the 99 local exchange carriers in the state. In addition to local exchange carriers, there are two other types of telecommunications providers. First, inter-LATA carriers, such as U.S. Sprint, which provide telecommunication services between LATAs, both intra-state and inter-state, but must purchase access services from local exchange carriers to originate and terminate their telecommunications. Second, resellers, which provide intra-LATA and inter-LATA telecommunications, both intra-state and inter-state, but do not own, operate, manage or control their own transmission facilities. *See* sec. 76.38(1)(bkm). Resellers purchase inter-LATA telecommunications services, such as Wide Area Telecommunications Services ("WATS"), from inter-LATA carriers, and purchase intra-LATA and access services from

local exchange carriers. As a result of the limitations imposed by the modification of final judgment, four types of telecommunications exist that require the utilization of access services purchased from local exchange carriers. First, intra-state/intra-LATA/inter-exchange telecommunications, those within a single LATA in this state, but between more than one exchange area, except where the local exchange carrier operates both the origination and termination exchanges, in which case the local exchange carrier is able to provide a complete end-to-end transmission. However, if the local exchange carrier operates only one of the exchanges, it must purchase access services from the local exchange carrier operating the other exchange. Second, intra-state/inter-LATA/ inter-exchange telecommunications, those within this state but between more than one LATA and exchange area. Third, inter-state/inter-LATA/inter-exchange telecommunications, those between this state and another, and between more than one LATA and exchange area. Fourth, inter-state/intra-LATA/inter-exchange telecommunications, those between one of the twelve excepted Wisconsin communities and an exchange in another state, but within the same LATA.

U.S. Sprint contends that the tax on the transfer of access services is unconstitutional because the tax only applies when the purchase is made by an inter-LATA carrier. To tax that transfer, but not the same purchase by a local exchange carrier or a reseller, U.S. Sprint argues, violates the equal protection clauses of the state and federal constitutions and the commerce clause of the federal constitution.

The tax is imposed pursuant to secs. 77.51(14)(m) and 77.52(2)(a)4, Stats. The latter statute, the general taxing provision, provides:

**Imposition of retail sales tax. . . . (2)** For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts from the sale, performance or furnishing of the services.

(a) The tax imposed herein applies to the following types of services: . . . 4. The sale of telephone services of whatever nature including in addition to services connected with voice communication, any services connected with the transmission of sound, vision, information, data or material other than by voice communication, and connection, move and change charges, except services paid for by insertion of coins in a coin-operated telephone and except interstate service, unless that interstate service originates from and is charged to a telephone located in this state.

Section 77.51(14)(m), Stats., defines a "sale" of telephone services as follows:

GENERAL SALES AND USE TAX. **Definitions.** . . . **(14)** "Sale", "sale, lease, or rental", "retail sale", "sale at retail", or equivalent terms include any or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property or services for use or consumption but not for resale as tangible personal property or services and includes: . . . (m) Transfers of services to an interexchange carrier which permit the origination or termination of telephone messages between a customer in this state and one or more points in another local access and transport area, as defined in s. 76.38(1)(bd).

The term "interexchange carrier" in sec. 77.51(14)(m), Stats., refers to an inter-LATA carrier.

A challenge to the constitutionality of a legislative act is a question of law which this court may review without deference to the lower courts. *Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883 (1987). Legislative acts are presumed constitutional, and the presumption is particularly strong in the area of taxation. *See Madden v. Kentucky,* 309 U.S. 83, 88 (1940); *Simanco, Inc., v. Department of Revenue,* 57 Wis. 2d 47, 54, 203 N.W.2d 648 (1973).

> When the constituted authority of the State undertakes to exert the taxing power, and . . . the validity of its action is . . . [questioned], every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action.

*Walters v. City of St. Louis,* 347 U.S. 231, 237–38 (1954) (quoting *Green v. Frazier,* 253 U.S. 233, 239 (1920). The person challenging the act must prove it unconstitutional beyond a reasonable doubt. *Treiber v. Knoll,* 135 Wis. 2d 58, 64, 398 N.W.2d 756 (1987). Where doubt exists as to the legislative act's constitutionality, it must be resolved in favor of upholding the act. *Id.*

> If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court.

*State ex rel. Carnation M.P. Co. v. Emery,* 178 Wis. 147, 160, 189 N.W. 564 (1922).

The equal protection clause of Article I, Section I of the Wisconsin Constitution provides:

**Equality; inherent rights.** SECTION I. All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

The Fourteenth Amendment, Section I of the United States Constitution similarly provides:

[No State shall] deny to any person within its jurisdiction the equal protection of the laws.

This court has previously held that because the equal protection clauses of the Wisconsin and United States Constitutions are substantially equivalent, the former is to be interpreted to afford substantially the same protections as its federal counterpart. *See Treiber,* 135 Wis. 2d at 67 n.3; *Midcontinent Broadcasting Co. v. Dept. of Revenue,* 98 Wis. 2d 379, 402 n.15, 297 N.W.2d 191 (1980).

Equal protection guarantees that those who are similarly situated will be treated alike. *Treiber,* 135 Wis. 2d at 68-69. An act will be declared violative of equal protection only when the legislature has made an irrational or arbitrary classification. *Milwaukee Brewers v. DH& SS,* 130 Wis. 2d 79, 99, 387 N.W.2d 254 (1986). A classification will be held constitutional if there exists a rational basis for the legislature's treating the classes differently. *Funk v. Wollin Silo & Equipment Co.,* 148 Wis. 2d 59, 69, 435 N.W.2d 244 (1989). The basis for the classification must have a fair and substantial relation to the purpose of the enactment. *Metropolitan Life Ins. Co.*

*v. Ward,* 470 U.S. 869, 881 (1985); *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 527 (1959). An equal protection violation is not to be found merely because some inequity results from the classification. *Dandridge v. Williams,* 397 U.S. 471, 485 (1970); *Funk,* 148 Wis. 2d at 69.

> Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.

*Walters,* 347 U.S. at 237. Though not dispositive in and of themselves, *see Milwaukee Brewers,* 130 Wis. 2d at 97–98, this court has set forth five factors to be considered in determining whether there exists a rational basis justifying a legislative classification: first, the classification must be based upon substantial distinctions which make one class really different from another; second, the classification must be germane to the purpose of the law; third, the classification must not be based upon existing circumstances only and must not be so constituted as to preclude addition to the numbers included within a class; fourth, to whatever class a law may apply, it must apply equally to each member thereof; and fifth, the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation. *See Harris v. Kelley,* 70 Wis. 2d 242, 252, 234 N.W.2d. 628 (1975).

The legislature undeniably has wide latitude in enacting taxes to ensure revenue. *See Alleghany Pittsburg Coal Co. v. County Comm.,* 109 S. Ct. 633, 638

(1989); *Allied Stores,* 358 U.S. at 526; *Montgomery Ward & Co. v. Rev. Dept.,* 142 Wis. 2d 771, 779, 419 N.W.2d 348 (Ct. App. 1987).

> The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function.

*Simanco,* 57 Wis. 2d at 54. "The Equal Protection Clause . . . imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." *Allied Stores,* 358 U.S. at 526. The legislature " '[i]n its discretion may tax all, or it may tax one or some, taking care to accord to all *in the same class* equality of rights.' " *Walters,* 347 U.S. at 237 (emphasis in original) (quoting *Southwestern Oil Co. v. Texas,* 217 U.S. 114, 121 (1910)).

U.S. Sprint contends that secs. 77.51(14)(m) and 77.52(2)(a)4, Stats. violate equal protection because the tax only applies to purchases of access services by inter-LATA carriers. Purchases of access services by local exchange carriers are not taxed because the tax only applies to inter-LATA telecommunications, which local exchange carriers are prohibited from providing. Purchases of access services by resellers are not taxed because of the language "but not for resale" in sec. 77.52(2)(a)4, Stats. U.S. Sprint argues there is no rational basis for the legislature's classifying inter-LATA carriers separately from local exchange carriers and resellers for the purpose of taxing the transfer of access services. The State contends that the classification is rational on three grounds. First, the transfer of

access services to an inter-LATA carrier constitutes a "sale at retail," to which a privilege tax has traditionally applied, because inter-LATA carriers "use or consume" access services in providing telecommunications services to their customers. The transfer of access services to resellers, however, does not constitute a "sale at retail" because resellers merely "resell" telecommunications services to their customers. As for local exchange carriers, the State asserts that it is beyond the record in this case as to whether local exchange carriers purchase access services. Second, the State argues the classification is rational as a matter of administrative convenience to resolve a dispute between two State agencies as to whether inter-LATA carriers may be taxed for purchases of access services. Third, the State asserts the classification is rational as a matter of public policy to "carry forward the general policy of the sales tax and resolve a dispute between two State agencies."

Under the guidance of the factors set forth in *Harris,* we can find no merit in any of the State's contentions. U.S. Sprint and the State agree that the legislature enacted sec. 77.51(14)(m), Stats., to offset the expected loss of revenue caused by a Department ruling, *see* Wisconsin Department of Revenue Ruling SR–1 (May 31, 1985), which concluded that neither inter-LATA carriers nor resellers were liable to pay the tax for the purchase of access services. *See also* Final Report of the Telecommunications Tax Study Committee (February 17, 1989). The purpose of the tax, to generate revenue, is ill served, however, by imposing the tax only on the transfer of access services to inter-LATA carriers, when local exchange carriers and resellers make the same purchase. Prior to the legislature's enacting sec. 77.51(14)(m), Stats., by virtue of the Department's rul-

ing the purchase of access services by a local exchange carrier, inter-LATA carrier or reseller did not constitute a "sale" and thus was not subject to the tax. The Department's ruling was consistent with previous decisions of this court. *See, e.g., Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 51, 257 N.W.2d 855 (1977). The legislature responded by amending the definition of a "sale" to include the purchase of access services by an inter-LATA carrier. We fail to find any substantial distinction, however, between inter-LATA carriers, local exchange carriers and resellers that justifies treating the purchase of access services by an inter-LATA carrier dissimilarly from the same purchase by a local exchange carrier or reseller. The State argues that the purchase of access services by an inter-LATA carrier constitutes a "sale" because inter-LATA carriers "use or consume" those services by combining them with their own facilities to provide telecommunications services. The purchase of access services by a reseller, the State asserts, merely constitutes a "sale for resale" because resellers do not own transmission facilities. But the taxability of a sale depends upon the specific circumstances of the transaction to which the tax relates rather than upon the parties to it. *Kollasch v. Adamany,* 104 Wis. 2d 552, 565, 313 N.W.2d 47 (1981). The fact that inter-LATA carriers "own" the facilities which provide the intermediate link in their telecommunications services while resellers do not does not justify the disparate tax treatment here. Even if we accepted the State's argument, it does not support the legislature's treating inter-LATA carriers disparately from local exchange carriers, who do own their facilities. We disagree with the State that the record fails to show that local exchange carriers purchase access services. The record is replete with evidence of that fact. In terms of the purpose of the tax,

there is nothing unique about the purchase of access services by an inter-LATA carrier as opposed to the same purchase by a local exchange carrier or reseller which justifies the disparate treatment. *Cf. Funk*, 148 Wis. 2d at 74; *Tavern League v. City of Madison*, 131 Wis. 2d 477, 487-88, 389 N.W.2d 54 (Ct. App. 1986). Local exchange carriers, inter-LATA carriers and resellers all purchase and use access services in the same manner and for the same purpose, to originate or terminate telecommunications. Yet the legislature has arbitrarily chosen to define only the transfer of access services to an inter-LATA carrier as a "sale" to which the tax applies. The State asserts, and we agree, that it was within the legislature's authority to disagree with the Department that the transfer of access services to an inter-LATA carrier constitutes a taxable "sale." But when the legislature acts, it must do so within the bounds of the constitution. Equal protection requires that because each are similarly situated, if the transfer of access services to inter-LATA carriers is to be taxed, the same transfer to local exchange carriers and resellers must be taxed as well. *See Allegheny*, 109 S. Ct. at 638-39. To the extent that inter-LATA carriers "use or consume" access services in providing telecommunications services to their customers, so do interexchange carriers and resellers. The effect of the legislation here is to treat similarly situated persons disparately without a rational basis to support the distinction.

Nor can we find any merit in the State's contention that the tax was a means to resolve a dispute between two State agencies, the Department and the Public Service Commission. Administrative convenience can serve as a valid basis upon which a tax may be imposed by the legislature upon a particular transaction. *Ramrod, Inc., v. Dept. of Revenue*, 64 Wis. 2d 499, 510, 219 N.W.2d

604 (1974). We find no inconsistency, however, between the reports of the agencies cited by the State. In Public Service Commission Order 05-TI-4, issued on June 2, 1983, the Commission, for purposes of resolving "a variety of definitional, policy, jurisdictional, and pricing questions," distinguished resellers from inter-LATA carriers as follows:

> Resellers own no transmission facilities. This is unlike 'other common carriers.' . . . who operated publicly switched networks in limited areas and may or may not use a portion of the present utility network. [Other common carriers] may resell as *part* of their business; it is not their only business.

The Public Service Commission's order did not, however, address the question of whether the transfer of access services to inter-LATA carriers could be taxed but not the same transfer to resellers. Later in its report, the Commission stated:

> The myriad of issues on access charges for resellers can not be fully addressed in this docket. However, the commission finds no need to delay the benefits of resale until the resolution of those issues. The issue of appropriate access charges for resellers shall be addressed in 05-TI-5.

It is unclear from the Commission's statement whether even Public Service Commission Order 05-TI-5 would address the question here, and the subsequent order is not relied upon by the State nor in the record.

The Department's ruling did directly address the question here, but its ruling is not contrary to the definitional statement in Public Service Commission Order 05-TI-4. On May 31, 1985, the Department adopted an earlier proposed declaratory ruling, SR-1, which distin-

guished inter-LATA carriers from resellers in its find-
ings of fact as follows:

> An interexchange . . . carrier is a regulated entity
> which transmits messages between exchanges for
> profit. A reseller is a regulated entity that buys ser-
> vices in bulk and resells those services to smaller
> users . . .

In its conclusions of law, the Department stated:

> The gross receipts received by Wisconsin Bell, Inc.,
> for providing access to local circuits to [inter-
> exchange carriers] and resellers are subject to the tax
> imposed under Section 77.52(2)(a)4, Stats., unless
> the resale exemption applies.

The Department further stated:

> Resellers sell all or part of these services to their
> customers without alteration or use by the resellers.
> Wisconsin Bell, Inc., may accept a resale certificate
> from resellers who meet the requirement of Section
> 77.52(14), Stats.

> The resale exclusion for the sale of access to [inter-
> exchange carriers] is a closer question. There is opin-
> ion testimony that the [interexchange carriers] use or
> integrate the access they obtain into the services they
> provide their customers. Resale does not include use.
> However, if we classify Wisconsin Bell, Inc., access
> service as a component part of a message pathway,
> being only used by the ultimate customers to trans-
> mit their messages, then it is proper to classify the
> [interexchange carriers] purchase of access as a
> purchase for resale. Wisconsin Bell, Inc., may accept
> a resale certificate from [interexchange carriers] who
> meet the requirements of Section 77.52(14), Stats.

The definition of a reseller in the Department's ruling is entirely consistent with the definition stated in the earlier Public Service Commission order. The only difference between the two reports is that the Department went further and addressed the question of whether inter-LATA carriers and resellers were liable to pay the tax on their purchase of access services. The Department concluded they were not because inter-LATA carriers "resell" access services to their customers the same as resellers. Contrary to the State's contention, there was no administrative dispute that needed to be resolved.

We likewise can find no merit in the State's last contention that the classification established a "public policy which carries forward the general policy of the sales tax and resolves a dispute between two State agencies." The State's contention is essentially a repetition of its two previous arguments, and fails for the same reasons.

■■■

We hold that to tax the transfer of access services to inter-LATA carriers but not the same transfer to local exchange carriers and resellers denies inter-LATA carriers the constitutional guarantee of equal protection of the laws. We therefore declare unconstitutional the tax imposed upon the transfer of access services to an inter-LATA carrier pursuant to secs. 77.51(14)(m) and 77.52(2)(a)4, Stats.

*By the Court.*—The judgment of the circuit court is reversed, and rights declared.