[This opinion has been published in *Ohio Official Reports* at 68 Ohio St.3d 195.]

MCI TELECOMMUNICATIONS CORPORATION, APPELLANT AND CROSS-APPELLEE, *v*. LIMBACH, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *MCI Telecommunications Corp. v. Limbach*, 1994-Ohio-489.]

*Taxation—Personal property tax—Facility-based interexchange telephone message carrier's equipment taxed at one hundred percent of true value while its competitors' equipment is assessed at thirty-one percent of true value—Equal Protection Clause violated, when—Notice of appeal to Board of Tax Appeals—In resolving questions regarding effectiveness of a notice of appeal, Supreme Court not disposed to deny review by a hypertechnical reading of the notice—Unconstitutionality of tax statute raised—Board of Tax Appeals receives evidence and Supreme Court makes constitutional finding.*

(No. 92-1199—Submitted October 19, 1993—Decided February 2, 1994.)

APPEALS and CROSS-APPEAL from the Board of Tax Appeals, No. 88-G-1137.

———————————

{¶ 1} MCI Telecommunications Corporation ("MCI"), appellant and cross-appellee, claims that the Tax Commissioner, appellee and cross-appellant, denied it equal protection of the laws because she assessed its equipment for personal property tax purposes at one hundred percent of true value but assessed its competitors' at thirty-one percent of true value. MCI projects that this treatment resulted in its incurring an additional tax liability of $4,659,625.

{¶ 2} The commissioner, on the other hand, cross-appeals the BTA's ruling apportioning MCI's wireless, microwave transmitting equipment to the taxing districts in which MCI operates according to MCI's wire-mile ratio, calculated on MCI's fiber-optic cable. She asserts that the equipment should be apportioned according to its physical location.

{¶ 3} MCI is a facility-based, interexchange carrier of telephone messages. It transmits telephone calls between local telephone companies' local access transport areas ("LATAs")—intrastate, interstate, and internationally. MCI provides "intercity telephone services * * * primarily over its own coast-to-coast terrestrial microwave and optical fiber communications system and, to a far lesser extent, over facilities leased from other common carriers and by satellite transmission." MCI began as a reseller of long distance service, leasing lines from other long distance carriers, but acquired, over time, wireless, microwave equipment and, by 1987, fiber-optic cable.

{¶ 4} Typically, MCI transmits a call by switching it from the LATA, with MCI's switching equipment, into MCI's system or onto a leased line. It carries the message to the destination LATA and switches the call, again with its switching equipment, into the destination LATA, which carries the call to the destination telephone. If transmitting on the microwave equipment, MCI bounces a radio signal from tower to tower until received at a terminal. If transmitting on the fiber-optic system, MCI converts the signal to light and transmits the light signal over the fiber-optic transmission links to the destination switching equipment.

{¶ 5} For tax year 1987, the year in dispute, MCI reported its equipment to the commissioner under R.C. 5727.08. The commissioner depreciated the original cost of the equipment by fifty percent to determine the equipment's true value and assessed the equipment at one hundred percent of true value. The commissioner then apportioned the assessed or taxable value of the microwave equipment to the taxing district in which it was physically located. However, she apportioned the fiber-optic property to the taxing districts where that type of property was located according to the ratio of miles of fiber-optic cable in the given district to the total miles of fiber-optic cable in the entire state.

{¶ 6} MCI challenged these decisions. On appeal to the BTA, it maintained that all its property, not just its fiber-optic property, should be apportioned

according to the wire-mile ratio. It also presented evidence to the BTA in support of its contentions that (1) it is not a telephone company, but a general business; (2) resellers, which, instead of owning transmission equipment, lease WATS lines from AT&T or other inter-LATA carriers to transmit its messages, are treated as general businesses and assessed at thirty-one percent of true value; and (3) two facility-based competitors, Allnet Communication Services, Inc. and Cable & Wireless Management Services, Inc., were treated by the commissioner as general businesses and were also assessed at thirty-one percent.

**{¶ 7}** The BTA liberally received evidence but made no findings of fact on the constitutional, equal-protection questions. As to the apportionment question, the BTA reversed the order of the commissioner. The BTA agreed with MCI and directed the commissioner to apportion all the equipment according to the wire-mile formula.

**{¶ 8}** The cause is before this court upon an appeal and cross-appeal as a matter of right.

––––––––––––––––––

*Jones, Day, Reavis & Pogue*, *John C. Duffy, Jr.*, *Beth Heifetz*, *Timothy B. Dyk*, *Walter Nagel* and *Douglas A. Richards*, for appellant and cross-appellee.

*Lee I. Fisher*, Attorney General, *Barton A. Hubbard* and *James C. Sauer*, Assistant Attorneys General, for appellee and cross-appellant.

––––––––––––––––––

**Per Curiam.**

A

Specifying Error in the Notice of Appeal

**{¶ 9}** In paragraph four of its notice of appeal filed with the BTA, MCI asserted that the commissioner's application of R.C. 5727.10 to it denied it equal protection of the laws, and, in paragraph five, that the commissioner's failure to apply the general personal property tax statute to it, R.C. 5711.22, also denied it

equal protection. The commissioner, in her Proposition of Law No. III, asserts the notice of appeal was specific enough to challenge the statutes on their face but not specific enough to challenge them as applied to MCI. MCI, in its Proposition of Law No. V on cross-appeal, maintains that the commissioner is hypertechnically attempting to deny it an appeal.

{¶ 10} According to *Buckeye Internatl., Inc. v. Limbach* (1992), 64 Ohio St.3d 264, 267, 595 N.E.2d 347, 350:

"Failure to include errors in the notice of appeal to the BTA results in the BTA's lack of jurisdiction over the errors and the court's inability to review such errors."

{¶ 11} Citing *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 383, 575 N.E. 2d 146, 147, we concluded that Buckeye had raised an alternate argument, rather than a distinct, separate objection, because "it specified the commissioner's action that it questioned, cited the statute under which it objected, and asserted the treatment it believed the commissioner should have applied to the income." *Id.*, 64 Ohio St.3d at 268, 595 N.E.2d at 350. Moreover, we stated:

"In resolving questions regarding the effectiveness of a notice of appeal, we are not disposed to deny review by a hypertechnical reading of the notice." *Id*.

{¶ 12} Here, MCI set forth the action it contested, stated that this action denied it equal protection of the laws, and asserted the statute under which it should have been taxed. Under *Buckeye*, the notice sufficiently sets forth the claim that the statutes were unconstitutionally applied to MCI.

B

BTA's Role in Constitutional Questions

{¶ 13} The BTA understood its role to be a receiver of evidence for constitutional challenges. Accordingly, it did so, giving the parties wide latitude in presenting the evidence. The BTA determined no facts on the constitutional

4

questions. The commissioner, however, in her Proposition of Law No. IV, contends that the BTA not only receives evidence in this type of case, but must weigh the evidence and determine the facts necessary for the court's review of the constitutional questions. Since the BTA did not make findings of fact, the commissioner asserts that we should remand the case for the BTA to comply.

{¶ 14} In *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St. 3d 229, 520 N.E.2d 188, paragraph three of the syllabus, we held:

"The question of whether a tax statute is unconstitutional when applied to a particular state of facts must be raised in the notice of appeal to the Board of Tax Appeals, and the Board of Tax Appeals must receive evidence concerning this question if presented, even though the Board of Tax Appeals may not declare the statute unconstitutional. (*Bd. of Edn. of South-Western City Schools v. Kinney* [1986], 24 Ohio St.3d 184, 24 OBR 414, 494 N.E.2d 1109, construed.)"

{¶ 15} We explained the process, at 232, 520 N.E.2d at 191-192:

"When a statute is challenged on the basis that it is unconstitutional in its application, this court needs a record, and the proponent of the constitutionality of the statute needs notice and an opportunity to offer testimony supporting his or her view.

"To accommodate this court's need for extrinsic facts and to provide a forum where such evidence may be received and all parties are apprised of the undertaking, it is reasonable that the BTA be that forum. The BTA is statutorily created to receive evidence in its role as factfinder."

{¶ 16} Under *Cleveland Gear*, the BTA need only receive evidence for us to make the constitutional finding. This is because the BTA accepts facts but cannot rule on the question. On the other hand, we can decide the constitutional questions but have a limited ability to receive evidence. Thus, the BTA receives evidence at its hearing, but we determine the facts necessary to resolve the constitutional question.

C

Equal Protection

{¶ 17} In Proposition of Law No. III, MCI argues that the commissioner's assessing it for personal property tax purposes at one hundred percent of true value while assessing resellers at thirty-one percent violates the Equal Protection Clauses of the federal and Ohio Constitutions. In her Proposition of Law No. V, the commissioner responds that the record does not support a finding that she or the General Assembly intentionally and systematically discriminated between MCI and similarly situated taxpayers so as to deny MCI equal protection.

{¶ 18} According to *Nordlinger v. Hahn* (1992), 505 U.S. __, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12:

"Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990-991] (1920).

"As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' *McGowan v. Maryland*, 336 U.S. 420, 425-426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399] (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. See, *e.g.*, *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-441 [105 S.Ct. 3249, 3254-3255, 87 L.Ed.2d 313,

6

320-321] (1985); *New Orleans v. Dukes*, 427 U.S. 297, 303 [96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517] (1976)."

{¶ 19} In *Allegheny Pittsburgh Coal Co. v. Webster Cty.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688, the United States Supreme Court upheld the power of the state to divide different kinds of property into classes and to assign to each a different tax burden so long as those divisions and classifications are neither arbitrary nor capricious. However, the court rejected the Webster County assessor's application of the state tax law in a manner that resulted in an unreasonable disparity in assessed value between the taxpayer's property and similarly situated property. It held that the intentional, systematic undervaluation of such other property unfairly deprived the taxpayer of its rights under the Equal Protection Clause. Finally, the court held that the offended taxpayer was not, in attacking the discrimination, limited to seeking an upward revision of the taxes for the other members of the class, but could seek a downward adjustment of its own property. *Id.* at 344-346, 109 S.Ct. at 638-639, 102 L.Ed.2d at 697-699.

{¶ 20} Similarly, in *Boothe Financial Corp. v. Lindley* (1983), 6 Ohio St. 3d 247, 6 OBR 315, 452 N.E.2d 1295, paragraphs one and two of the syllabus, we held:

"1. A taxpayer, although assessed at not more than true value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others. (*Southern Railway Co. v. Watts*, 260 U.S. 519 [43 S.Ct. 192, 67 L.Ed. 375], followed.)

"2. A taxpayer who leases equipment is denied equal protection when a competitor, who manufactures and leases essentially identical equipment, is allowed to grossly undervalue his property by reporting the value of his equipment at manufacturing cost less depreciation, and the former is not allowed to report the value of equipment in the same manner."

**{¶ 21}** According to the opinion, Boothe Financial purchased computer equipment from IBM and leased it to customers. Boothe Financial, according to the commissioner's ruling, had to value the equipment at acquisition cost less depreciation. IBM, which also leased its manufactured equipment to others, based its true value on its manufacturing cost less depreciation, which produced a lower valuation than for Boothe Financial. Under these facts, we concluded that Boothe Financial was denied equal protection.[1]

**{¶ 22}** In this case, MCI argues that it owns or leases equipment similar to that owned or leased by resellers. This equipment includes switches, telephone processing equipment, and general office equipment. The only distinction between MCI and resellers is that MCI, a facility-based carrier, owns or leases the transmission equipment while resellers lease WATS lines from other interexchange carriers. However, MCI urges, this is a distinction without a difference, since resellers essentially lease a portion of the interexchange companies' transmission equipment in leasing WATS lines.

**{¶ 23}** To counter this, the commissioner argues that resellers, unlike "telephone companies," do not own or lease the transmission equipment but merely buy and resell transmission service from companies that own transmission equipment.

**{¶ 24}** However, the Public Utilities Commission treats facility-based carriers and resellers the same. The commissioner's argument ignores the commission's April 9, 1985 order in *In re Regulatory Framework for Telecommunication Serv. in Ohio* (1985), 66 P.U.R.4th 572, No. 84-944-TP-COI, which determined that resellers transmit telephonic messages as a "telephone company" within the meaning of that term as contained in the Tax Code in the

---

1. The commissioner responded to that decision by requiring manufacturer-lessors to record the leased equipment at the price at which the property would be sold outright to the lessee prior to the commencement of the lease payments. Ohio Adm. Code 5703-3-31.

disputed year. Compare former R.C. 5727.01(E)(2) with 4905.03(A)(2). Moreover, the commission held that facility-based carriers and resellers are in the same interexchange carrier category, and the commission regulates both in the same manner. The commission requires both to be certified by the commission, and both to set their rates flexibly within the range approved by the commission. The commission applies virtually all other oversight procedures to both carriers.

{¶ 25} Thus, two taxpayers within the same class owning or leasing the same type of equipment are treated differently, and this treatment denies MCI equal protection of the laws. As MCI argues, it should have its equipment valued as general business property under R.C. Chapter 5711 rather than as public utility property under R.C. Chapter 5727. This treatment would result in MCI's equipment being assessed at thirty-one percent of true value, the assessment rate for 1987, and sitused according to its physical location under R.C. Chapter 5711.

{¶ 26} Moreover, *GTE Sprint Communications Corp. v. Wisconsin Bell, Inc.* (1990), 155 Wis. 2d 184, 454 N.W.2d 797, supports this result. In that case, the Wisconsin Supreme Court held that a statute that imposed a retail sales tax on furnishing local-access-carrier telephone services to an inter-LATA carrier denied equal protection to that inter-LATA carrier because the state did not impose the tax on furnishing the same services to, *inter alia*, a reseller of the telephone services. The court decided that "[e]qual protection requires that because each [is] similarly situated, if the transfer of access services to inter-LATA carriers is to be taxed, the same transfer to local exchange carriers and resellers must be taxed as well. See *Allegheny* [488 U.S. at 345], 109 S. Ct. [at] 638-39 [102 L.Ed.2d at 698]. To the extent that inter-LATA carriers 'use or consume' access services in providing telecommunication services to their customers, so do interexchange carriers and resellers. The effect of the legislation here is to treat similarly situated persons disparately without a rational basis to support the distinction." *Id.*, at 198, 454 N.W.2d at 803.

**{¶ 27}** Since we hold that the commissioner denied MCI equal protection on the above basis, we will not address MCI's remaining equal protection claims. Moreover, with this holding, MCI's equipment will be sitused under R.C. Chapter 5711 to the taxing districts where located. Consequently, the situsing issue is moot, and we will not address the commissioner's cross-appeal.

**{¶ 28}** Accordingly, we hold that the commissioner denied MCI equal protection by overvaluing MCI's property vis-a-vis the property of resellers. Therefore, we reverse the decision of the BTA and remand the cause for further proceedings consistent with this opinion.

*Decision reversed*

*and cause remanded.*

A.W. SWEENEY, WRIGHT, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., dissent.

_____