[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 9.]

GTE NORTH, INC., APPELLANT, *v*. ZAINO, TAX COMMR., APPELLEE.

[Cite as *GTE North, Inc. v. Zaino*, 2002-Ohio-2984.]

*Taxation—Public utilities—Constitutionality of assessment rates prescribed in R.C. 5727.111(B)—Telephone company is not similarly situated to an interexchange telecommunications company for purposes of the Equal Protection Clauses of the Ohio and United States Constitutions.*

(No. 2001-0694—Submitted February 27, 2002—Decided July 3, 2002.)

APPEAL from the Board of Tax Appeals, No. 98-P-893.

_____

SYLLABUS OF THE COURT

A "telephone company," as defined in R.C. 5727.01(D)(2), is not similarly situated to an "interexchange telecommunications company," as defined in R.C. 5727.01(H), for purposes of the Equal Protection Clauses of the Ohio and United States Constitutions.

_____

MOYER, C.J.

{¶1} This cause originated as a challenge by appellant taxpayer GTE North, Inc., now known as Verizon North, Inc. ("GTE"), to a final determination of Roger Tracy, predecessor of Thomas Zaino, appellee, the Tax Commissioner of Ohio. GTE challenged the commissioner's tax assessments of its public utility property for four tax years, including 1997, and ultimately appealed to the Board of Tax Appeals ("BTA"). GTE challenged the constitutionality of the assessment rates prescribed in R.C. 5727.111(B). GTE contended that application of that statute resulted in a violation of the Equal Protection Clauses of the Ohio and United States Constitutions.

{¶2} The BTA held a hearing and received evidence submitted by both parties. Thereafter, pursuant to *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio

St.3d 229, 520 N.E.2d 188, and *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 625 N.E.2d 597, the BTA affirmed the commissioner's determination based on its recognition that it lacked jurisdiction to determine GTE's constitutional challenge. The cause is before this court upon an appeal as of right.

{¶3} The statute challenged by GTE, former R.C. 5727.111, provided for tax year 1997 as follows:

{¶4} "The taxable property of each public utility * * * and of each interexchange telecommunications company shall be assessed at the following percentages of true value:

{¶5} "* * *

{¶6} "(B) In the case of a telephone * * * company, the percentage provided under (D) of section 5711.22 of the Revised Code for taxable property first subject to taxation in this state for tax year 1995 or thereafter, and eighty-eight per cent for all other taxable property;

{¶7} "* * *

{¶8} "(G) The percentage provided under division (D) of section 5711.22 of the Revised Code in the case of an interexchange telecommunications company." 146 Ohio Laws, Part I, 1664.

{¶9} R.C. 5711.22(D), referred to in the foregoing statute, established a twenty-five percent assessment rate. 146 Ohio Laws, Part I, 1659.

{¶10} The commissioner determined that GTE is a "telephone company" subject to R.C. 5727.111(B). Accordingly, its taxable personal property that was first subject to tax after 1994 is assessed at twenty-five percent; the remainder is assessed at eighty-eight percent. Id. In contrast, all the taxable personal property of interexchange telecommunications companies, with which GTE competes for certain segments of telephone business, is assessed at twenty-five percent of true value.

Former R.C. 5727.111(G) and 5711.22(D). GTE claims that it is thereby denied equal protection of the law.

{¶11} In the property tax report filed by GTE for tax year 1997, the value of its property assessed at eighty-eight percent of true value was $418,874,324 and the value of its property assessed at twenty-five percent of true value was $233,842,764. GTE estimates that assessing some of its property at eighty-eight percent instead of twenty-five percent resulted in an additional tax liability of $16.8 million for tax year 1997.

{¶12} The terms "telephone company" and "interexchange telecommunications company" as used in R.C. 5727.111 are defined in R.C. 5727.01. "Public utility" is defined in R.C. 5727.01(A) as including each "person referred to as a telephone company." R.C. 5727.01(D) defines "telephone company" as follows:

{¶13} "(D) Any person:

{¶14} "* * *

{¶15} "(2) Is a telephone company when *primarily engaged* in the business of *providing local exchange telephone service*, excluding cellular radio service, in this state;

{¶16} "* * *

{¶17} "As used in division (D)(2) of this section, 'local exchange telephone service' means making available or furnishing access and a dial tone to all persons within a local calling area for use in originating and receiving voice grade communications over a switched network operated by the provider of the service within the area and for gaining access to other telecommunication services." (Emphasis added.)

{¶18} The term "interexchange telecommunications company" is separately defined in R.C. 5727.01(H):

{¶19} " 'Interexchange telecommunications company' means a person that is engaged in the business of transmitting telephonic messages to, from, through, or in this state, but that is not a telephone company."

{¶20} Thus, while interexchange telecommunications companies ("interexchange companies") are assessed and taxed under R.C. Chapter 5727, they are not considered to be telephone companies for the purposes of that chapter.

{¶21} It is well settled that the assessment of taxes is fundamentally a legislative responsibility and that a taxpayer challenging the constitutionality of a taxation statute "must negate every conceivable basis which might support it." *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106; *Weed v. Franklin Cty. Bd. of Revision* (1978), 53 Ohio St.2d 20, 21, 7 O.O.3d 63, 372 N.E.2d 338. We have acknowledged that, generally, " 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' " *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 199, 625 N.E.2d 597, quoting *McGowan v. Maryland* (1961), 366 U.S. 420, 425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393.

{¶22} A taxpayer is denied equal protection when a similarly situated competitor is allowed to grossly undervalue its property for tax purposes, the former is not authorized to assess its property in the same manner, and there is no rational basis for the disparate treatment. *Boothe Financial Corp. v. Lindley* (1983), 6 Ohio St.3d 247, 250, 6 OBR 315, 452 N.E.2d 1295; *Allegheny Pittsburgh Coal Co. v. Webster Cty. Comm.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688. The comparison of only similarly situated entities is integral to an equal protection analysis. That is, legislative tax classifications must not have the effect of " 'treating differently persons who are in all relevant respects alike.' " *MCI*, 68 Ohio St.3d at 199, 625 N.E.2d 597, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1. But the Equal Protection Clause "does not require things which

are different in fact * * * to be treated in law as though they were the same." *Tigner v. Texas* (1940), 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124.

{¶23} Accordingly, in determining whether R.C. 5727.111 deprives GTE of the constitutional right of equal protection we must first determine whether GTE, a local exchange telephone company ("local company"), is similarly situated to the interexchange telecommunications companies with which it competes.

{¶24} Prior to the enactment of the federal Telecommunications Act of 1996, P.L. 104-104, 110 Stat. 56, GTE provided its customers with traditional local residential and business phone service, along with optional features like call-waiting and caller ID. It was classified by the Public Utilities Commission of Ohio ("PUCO") as an incumbent local exchange company. It is undisputed, however, that GTE now competes with interexchange companies such as AT & T Communications and MCI Worldcom for what is known as "intraLATA toll call" business, as described below.

{¶25} A customer of GTE can place two types of toll calls to someone outside the customer's local exchange area: an *intraLATA* call and an *interLATA* call. The root "LATA" is an acronym for the term "local access and transport area," a concept that arose in the litigation that resulted in the breakup of the Bell system. The LATA concept divides the entire country into geographical local access and service areas beyond which Bell local exchange companies are not permitted to carry telephone calls. A LATA may include all or part of one or more area codes. However, any correlation between the LATA boundaries and the area code boundaries is more by coincidence than by design.

{¶26} A call that originates and terminates in the same LATA is designated an intraLATA call. An intraLATA call may or may not be a toll call, depending on whether it goes outside the local calling area. If the intraLATA call is between two phones within the same local calling area (and there is no per-call charge) the call is toll free. However, if a call is made between two local calling areas in the same

LATA it would be an intraLATA toll call. A call that originates in one LATA and terminates in a different LATA is an interLATA call.

{¶27} As a local company, GTE is authorized by the PUCO to provide intraLATA toll call service. Competing with GTE for intraLATA toll call customers are interexchange companies. In addition to intraLATA toll calls, the competing interexchange companies were also able to provide interLATA toll call service. As a local company, GTE is not authorized to handle interLATA toll calls.

{¶28} Before September 1996, all GTE customers who wanted to place an intraLATA toll call with a competing carrier were required to "dial around," i.e., dial a series of numbers, such as 10-10-321, to be connected with a competing intraLATA carrier. However, starting September 1996, as required by the PUCO and the Telecommunications Act of 1996, GTE began making equal access dialing (also referred to as "dialing parity") available to its customers. Using equal access a GTE customer had only to dial "1" plus the area code and local phone number and the intraLATA or interLATA toll call was switched automatically to a competing carrier, if one had been chosen by the customer. By December 1998, GTE's entire system allowed equal access dialing.

{¶29} As the offices of GTE were converted to equal access, customers were given ninety days to switch carriers for their intraLATA calls without a charge. For those customers who did not select another carrier, GTE continued as the default carrier for intraLATA toll calls. After GTE began implementing equal access dialing for intraLATA service in September 1996, more than two hundred thousand of its customers switched to competing interexchange companies, thereby decreasing GTE's intraLATA toll revenue. However, GTE does not dispute that it is a local exchange company and a telephone company for purposes of R.C. 5727.111, and acknowledges that its primary business remains that of providing local telephone service.

6

{¶30} There is a rational basis for differentiating between telephone companies and interexchange companies. The interexchange companies with which GTE competes for intraLATA calls do not provide local telephone service, and, correspondingly, GTE is not authorized to provide interLATA toll calls. Interexchange companies do not enjoy the advantage, held by GTE, of being the default provider of intraLATA call service for customers who fail to take affirmative action to choose another provider. Moreover, an interexchange company is required to pay the local exchange telephone company for access to its local lines. In short, each type of company has separate and distinct areas in which it can operate but the other cannot. They simply are not similarly situated, foreclosing GTE's equal protection challenge.

{¶31} GTE's reliance on *MCI*, supra, is misplaced. At the time relevant to *MCI*, both the public utilities statutes and the tax statutes defined a telephone company as one "engaged in the business of transmitting telephonic messages to, from, through, or in this state." Former R.C. 4905.03(A)(2), 1980 Am.Sub.H.B. No. 21, 138 Ohio Laws, Part I, 1443, and former R.C. 5727.01(E)(2), 1982 Am.Sub.H.B. No. 201, 139 Ohio Laws, Part I, 2052. Thus, as they existed at the relevant time for *MCI*, neither the public utilities statutes nor the tax statutes distinguished between different types of telephone companies. In addition, at the time relevant to *MCI* the PUCO had held in an order that resellers transmitting telephonic messages were also telephone companies. *MCI*, 68 Ohio St.3d at 200, 625 N.E.2d 597, citing *In re Regulatory Framework for Telecommunications Serv. in Ohio* (1985), 66 P.U.R.4th 572, No. 84-944-TP-COI. The PUCO also held that facilities-based carriers and resellers were in the same category as interexchange companies, and it regulated both in the same manner. In *MCI* the court held that two taxpayers owning or leasing the same type of equipment were being treated differently and, therefore, denied equal protection of the law. The resolution was for MCI's equipment to be taxed as general business property.

{¶32} The facts in this case are different from those in *MCI*. In 1987, after the time relevant to *MCI*, the General Assembly changed the definition of "telephone company" in the tax statutes. R.C. 5727.01(E)(2), Am.Sub.H.B. No. 171, 142 Ohio Laws, Part II, 2170, 2343. As a result, the definitions of "telephone company" in the public utility statutes and the tax statutes are no longer the same. Cf. R.C. 5727.01(E)(2) and 4905.03(A)(2). Since 1987, only local companies providing local exchange service, such as GTE, have been classified for tax purposes as telephone companies; interexchange companies have been separately classified. While GTE and the interexchange companies compete for intraLATA toll service, by definition the *primary* business of GTE, as a local exchange telephone service, is different from that of an interexchange company. R.C. 5727.01(D) and (H).

{¶33} The PUCO regulations have also been changed since the decision in *MCI*. While the PUCO still regulates both the local companies and the intraexchange activities of the interexchange companies, it has changed its regulations to recognize the differences between the two types of companies. For the year relevant to *MCI*, the PUCO regulations set forth in Ohio Adm.Code Chapter 4901:1-5 did not distinguish between the different types of telephone companies. However, in 1988, after the time relevant for *MCI*, the PUCO revised Ohio Adm.Code Chapter 4901:1-5 to apply to "the furnishing of intrastate telecommunications service and facilities to the public by local exchange companies subject to the jurisdiction of the public utilities commission." Former Ohio Adm.Code 4901:1-5-01(A). 1988-1989 Ohio Monthly Record 633. (Since the tax-listing date for tax year 1997, at issue here, the chapter has again been amended to further refine the differences between local exchange companies and interexchange companies. 1996-1997 Ohio Monthly Record 2602.) The definition section of the 1988 regulations, former Ohio Adm.Code 4901:1-5-02, provided separate and different definitions for a "local exchange company" and an

"interexchange carrier." 1988-1989 Ohio Monthly Record 634. In the 1988 PUCO regulations a "local exchange company" is one providing local exchange telecommunications service. Id., former Ohio Adm.Code 4901:1-5-02(VV). The term "local exchange service" was then defined as:

{¶34} "[T]elecommunications service provided within an exchange in accordance with an approved tariff. Included is the use of exchange facilities required to establish connections of the following types:

{¶35} "[1] Between the premises of subscribers served within the same exchange; or

{¶36} "[2] Between the premises of subscribers of the exchange and intraexchange trunks serving the exchange." Former Ohio Adm.Code 4901:1-5-02(WW).

{¶37} The same definitional section of the 1988 PUCO regulations defines an "interexchange carrier" as "any common carrier, *excluding local exchange companies*, radio common carriers, and cellular telephone companies, authorized to carry subscriber transmissions between or within LATAs in the state of Ohio." (Emphasis added.) Former Ohio Adm.Code 4901:1-5-02(LL).

{¶38} Thus, since the time relevant to *MCI*, both the tax statutes and the PUCO regulations have changed to differentiate between local companies and interexchange companies.

{¶39} We hold that a "telephone company," as defined in R.C. 5727.01(D)(2), is not similarly situated to an "interexchange telecommunications company," as defined in R.C. 5727.01(H), for purposes of the Equal Protection Clauses of the Ohio and United States Constitutions. The fact that one business competes with another does not, of itself, mean that the two companies are similarly situated for purposes of equal protection. Nor does the fact that the General Assembly has determined that both telephone companies and interexchange companies should be subject to

regulation by the PUCO preclude the General Assembly from differentiating between those companies for tax purposes.

{¶40} Because application of R.C. 5727.111 does not deprive GTE of equal protection, the decision of the BTA is affirmed.

Decision affirmed.

DOUGLAS, HANDWORK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs in judgment.

LUNDBERG STRATTON, J., dissents.

PETER M. HANDWORK, J., of the Sixth Appellate District, sitting for RESNICK, J.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶41} I respectfully dissent from the majority's judgment affirming the decision of the Board of Tax Appeals.

{¶42} The General Assembly clearly has the power to classify different kinds of property and designate different tax burdens for each, but such discrimination must not be arbitrary or capricious. *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 199, 625 N.E.2d 597, citing *Allegheny Pittsburgh Coal Co. v. Webster Cty. Comm.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688. Because I would hold that GTE (a local exchange telephone company) and its competitors (interexchange telecommunications companies) are similarly situated and that there is no rational basis for their unequal tax treatment, I would hold that R.C. 5727.111 deprives GTE of equal protection.

{¶43} The Revised Code treats public utility taxpayers as similarly situated in many chapters. R.C. 4905.03(A)(2) provides:

{¶44} "(A) Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, is:

{¶45} "* * *

10

**{¶46}** "(2) A telephone company, when engaged in the business of transmitting telephone messages to, from, through, or in this state and as such is a common carrier."

**{¶47}** Further, R.C. 4905.02's expansive definition of "public utilities" includes local exchange telephone companies and interexchange telecommunications companies. R.C. 4905.04 includes both local exchange telephone companies and interexchange telecommunications companies among those subject to regulation by the Public Utilities Commission. R.C. 4905.10 assesses both local exchange telephone companies and interexchange telecommunications companies in the same manner through tariffs in order to fund the Public Utilities Commission. Finally, R.C. 324.01 defines "telephone company" in a way that includes both local exchange telephone companies and interexchange telecommunications companies. The only place in the Revised Code where local exchange telephone companies and interexchange telecommunications companies were treated differently at the time of the filing of this case is in the tax assessment statute.

**{¶48}** Moreover, I believe that the rationale behind *MCI* applies to this case. In *MCI*, this court emphasized that both carriers in that case transmitted telephonic messages as "telephone companies" within the meaning of that term as contained in the tax code in the disputed year. Further, we examined whether the PUCO treated and regulated both carriers the same. In this case, both local exchange telephone companies and interexchange telecommunications companies transmit telephonic messages, and the regulatory structure by the PUCO was primarily the same for both local exchange telephone companies and interexchange telecommunications companies.

**{¶49}** In the name of leveling the playing field and quashing monopolies, the Telecommunications Act of 1996 mandated the unbundling of services by carriers like GTE, requiring them to lease their lines and equipment to competitors. But in my

view, taxation at different rates for these similarly situated telephone companies in the name of removing competition violates equal protection.

{¶50} Local exchange telephone companies and interexchange telecommunications companies provide the same services, the transmission of telephonic messages. Even though R.C. 5727.01(D)(2) and R.C. 5727.01(H) define the two carriers differently for tax purposes than other parts of the Revised Code, I would hold that changing the name does not change the substance of what these carriers are: telephone companies. I respectfully dissent and would reverse the decision of the Board of Tax Appeals and would enter judgment in favor of GTE.

_____

Thompson Hine, L.L.P., and John T. Sunderland, for appellant.

Betty D. Montgomery, Attorney General, and James C. Sauer, Assistant Attorney General, for appellee.

_____