This appeal involves a question concerning an insurer's potential waiver of its right to apply prospectively a premium received on behalf of its insured after an insurance policy has lapsed for nonpayment of premiums due.
In December 2004, Dennie Jackson ("the insured"), acting on behalf of herself and her two minor children, sued Rudolph Brown and State Farm Fire and Casualty Company ("the insurer"). The insured alleged that she and her children had been involved in a collision with Brown's automobile due to Brown's negligence or wantonness on or about September 19, 2003, and that she was entitled to uninsured-or underinsured-motorist insurance benefits from the insurer as a result of that collision. The claims against Brown were dismissed by stipulation, leaving only the insurer as a defendant. In December 2006, the insurer filed a motion for a summary judgment, supported by the affidavit of its claims examiner and the exhibits thereto; *Page 500 
that affidavit and those exhibits demonstrated that the collision at issue had actually occurred on September 17, 2003, and that the insured's policies with the insurer had lapsed on September 4, 2003, because of nonpayment of premiums. Although the insured filed a response in opposition to the insurer's summary-judgment motion, no other evidence was adduced.
The trial court initially denied the insurer's summary-judgment motion, noting in its order that the pertinent insurance policy had not been submitted to the trial court for its examination; however, at the insurer's request, and after the insurer had filed a certified copy of the insured's policy, the trial court reconsidered the matter and entered a summary judgment in favor of the insurer. The insured appealed from that judgment, [1]
which is final despite the trial court's failure to expressly rule upon the insurer's counterclaim against the insured under the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975. See Donnell Trucking, Inc. v.Shows, 659 So.2d 667, 669 (Ala.Civ.App. 1995).
Our standard of review of a summary judgment is well settled:
 "A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R. Civ. P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n,671 So.2d 674, 675 (Ala.Civ.App. 1995) (citations omitted).
The following facts may be gleaned from the insurer's evidentiary submissions. The insured and her children were covered under two automobile-liability insurance policies originally issued by the insurer in April 2002 that separately applied to two particular motor vehicles: a 1981 model Ford F-150 pickup truck and a 2000 model Ford Taurus automobile. However, the policy insuring the Ford F-150 is the only insurance policy at issue in this case. That policy, which bore an original expiration date of October 29, 2002, provided for automatic renewal periods upon payment of renewal premiums, but it also stated that after the policy had been in effect for 59 days, the policy could be canceled by mailing or delivering a written notice to the insured's address "10 days before the cancellation effective date if the cancellation is because [of nonpayment of] the premium."
On August 22, 2003, the insurer sent the insured notices of cancellation as to both of the policies that had been issued to the insured. In both notices, the insurer indicated that instruments sent to the insurer as premium payments had been returned unpaid by the insured's financial institution and that the policies would be canceled for nonpayment of premiums at 12:01 a.m. on September 4, 2003, unless other remittances to the insurer, in the form of cashier's checks or money orders, were made before that cancellation date. The amount due on the policy covering the Ford F-150 *Page 501 
was $119. Although each notice stated that a payment "prior to the date and time of cancellation will reinstate [the pertinent] policy," the notices further provided that if a payment was madeafter that date and time, the insured would "be informed whether [the] policy has been reinstated and, if so, the exact date and time of reinstatement." The notices further made clear that "[t]here is no coverage between the date and time of cancellation and the date and time of reinstatement" (emphasis added).
According to the affidavit of the insurer's claims examiner, both of the insured's policies were canceled effective September 4, 2003, from which it can be inferred that the insured did not act in accordance with the reinstatement conditions set forth in the cancellation notice sent by the insurer as to the policy insuring the Ford F-150 (i.e., by forwarding a cashier's check or a money order for $119 to the insurer by September 4, 2003, at 12:01 a.m.). The exhibits to the affidavit reveal that on the morning of September 17, 2003, the insured and her two children, while occupying the Ford Taurus, were involved in a collision with an automobile operated by Brown and were hospitalized with injuries. The affidavit states that the policy that had covered the Ford F-150[2] "was reinstated effective September 18, 2003, the day after" the collision; it can thus be inferred that a premium payment was made to the insurer or its agent by the insured or her agent on or after September 18, 2003, but that the insurer elected to specify a reinstatement date that did not precede the collision.
The insured argues on appeal that the insurer waived its right to deny coverage for the collision by accepting a belated premium payment on behalf of the insured as to the policy that had covered the Ford F-150 with knowledge that the collision had occurred. Under Alabama law, an insurer that acquires knowledge that an insured has suffered a loss within the perils covered by a policy of insurance during a period of default stemming from a failure to pay a premium may respond to an out-of-time tender of the overdue premium in three permissible ways: (1) it can "return the premium for the defaulting period," (2) it can apply the premium prospectively from a reinstatement date, or (3) it can "retain the premium and cover the . . . loss." AlabamaFarm Bureau Mut. Cas. Ins. Co. v. Hicks, 272 Ala. 574, 576,133 So.2d 221, 223 (1961); see also Carolina Cas. Ins. Co.v. Miss Deanna's Child Care — Med Net, L.L.C.,869 So.2d 1169, 1173 (Ala.Civ.App. 2003). As to the second of those options, we note that both Hicks and Med Net
indicate that an insurer has the right to condition renewal or reinstatement of a policy on the exclusion of coverage between the date of default and the date of reinstatement or renewal.Hicks, 272 Ala. at 576, 133 So.2d at 223; MedNet, 869 So.2d at 1173. That said, "`before an insurance company may avail itself to the second option provided inHicks, [the insurer's] intent must be clearly conveyed to the insured before premium payments are accepted."' Allenv. Dairyland Ins. Co., 391 So.2d 109, 110 (Ala. 1980) (emphasis removed; quoting Central Nat'l Ins. Group v.Grimmett, 340 So.2d 767, 768 (Ala. 1976)). Allen
further indicates *Page 502 
that such an intent can be discerned by reference to the content of notices sent to an insured at the time a policy lapses.
In this case, it should be noted that there is noevidence indicating that the insurer accepted any premiums from the insured with knowledge of the September 17, 2003, collision. In the response to the insurer's summary-judgment motion filed in the trial court on behalf of the insured, counsel for the insured recited a number of assertions in a "statement of undisputed facts," including that "[o]n or about September 19, 2003, [the insured's] husband, Ken, notified [the insurer] of the accident of September 17 and made a payment to [the insurer's office] in Boaz to reinstate coverage on the policy insuring the Ford F-150." The summary-judgment response also asserted that the insurer "accepted that check, and did not return it to [the insured]." Notably, counsel for the insured did not adduce any affidavit or other evidentiary material that might support those assertions. In the "Statement of the Facts" section of the insured's appellate brief, counsel for the insured cites those portions of his summary-judgment response as supporting the propositions that the insurer was informed of the collision before the reinstatement premium was paid and that the insurer "accepted [the] payment without stipulation."
However, the assertions contained in the response to the insurer's summary-judgment motion do not constituteevidence in this case. See Carver v. Foster,928 So.2d 1017, 1025 (Ala. 2005). Similarly, the insured's attorney's gloss upon the assertions made in that response does not materially alter the body of material facts by which the correctness of the summary judgment must be judged.
Nevertheless, even assuming that the record had substantiated the proposition that the insurer knew of the September 17, 2003, collision involving the Ford Taurus at the time that a belated premium payment on the policy that had covered the Ford F-150 was made, Hicks, Allen, and Med Net, taken together, indicate that an insurer is not obligated to afford coverage retroactive to a cancellation date upon payment of a reinstatement premium when the insurer clearly conveys its intent to condition reinstatement of the policy on the exclusion of coverage between the cancellation date and the reinstatement date. The insurer in this case clearly conveyed just such an intent, informing the insured in its cancellation notice that a premium payment made after September 4, 2003, at 12:01 a.m. would not guarantee reinstatement — indicating that the exact date and time of any such reinstatement would be at the insurer's discretion — and stating that no coverage would be afforded between the cancellation date and any reinstatement date. In contrast, the record in this case contains no evidence demonstrating that the insurer, on or after the date that the belated premium was paid, indicated to the insured or anyone acting on her behalf any intent to afford coverage for the. period between the cancellation date and the reinstatement date. As in Allen, "[n]o action on the part of [the insurer] was inconsistent with its intent to deny coverage."391 So.2d at 110.
At bottom, the only proper inference from the record in this case that would support the insured's claim in any way is that the insurer accepted a premium payment from her after the cancellation of the policy applicable to the Ford F-150. However, because Alabama law expressly affords a casualty insurer the right to accept a premium payment on a lapsed policy and to thereafter apply that premium prospectively, rather than retroactively, if notice to the insured of that intent has been given, and because such notice *Page 503 
was undisputedly given to the insured in this case, we can draw no inferences from the insurer's conduct that would allow the trier of fact to conclude that the insurer waived its right to deny coverage for the insured's claims arising from the September 17, 2003, collision. Thus, we conclude that the trial court properly entered a summary judgment in favor of the insurer. That judgment is therefore affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] We have jurisdiction over this appeal because the insurer's maximum exposure is bounded by the monetary limits of the uninsured/underinsured-motorist coverage in the policy,i.e., $40,000 per incident.
[2] Although the collision in which the insured and her children were injured occurred while the insured was operating the Ford Taurus, rather than the Ford F-150, that fact is not material. See St. Paul Ins. Co. v. Henson,479 So.2d 1253, 1253 (Ala.Civ.App. 1985) ("[U]ninsured motorist coverage inures to a person, not a vehicle, and the coverage is not dependent on the insured person being injured in connection with a vehicle which is covered by the liability insurer.").