BOOTHE FINANCIAL CORPORATION, APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Boothe Financial Corp. *v.* Lindley (1983), 6 Ohio St. 3d 247.]

(No. 82-1305—Decided August 17, 1983.)

*Messrs. Porter, Wright, Morris & Arthur, Mr. Roger F. Day, Mr. George M. Hauswirth and Ms. Jean Y. Teteris,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellee.

HOLMES, J. R.C. 5711.22 required appellant and IBM to list their personal property at seventy percent[4] of true value in money. The method for determining true value is set forth in R.C. 5711.18, which provides, in pertinent part:

"* * * In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money. * * *"

In *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410 [25 O.O.2d 432], we discussed the meaning of the term "true value," stating at 412:

"In the last analysis the value or true value in money of any property is the amount for which that property would sell on the open market by a willing seller to a willing buyer. In essence, the value of property is the amount of money for which it may be exchanged, *i.e.,* the sales price."

Since then this court has variously stated that standard, but we have consistently held that ultimately true value is to reflect market value. See, *e.g., Grabler Mfg. Co. v. Kosydar* (1975), 43 Ohio St. 2d 75 [72 O.O.2d 42]; *Conalco v. Bd. of Revision* (1977), 50 Ohio St. 2d 129 [4 O.O.3d 309]; *Meyer v. Bd. of Revision* (1979), 58 Ohio St. 2d 328 [12 O.O.3d 305]; and *Tele-Media Co. v. Lindley* (1982), 70 Ohio St. 2d 284 [24 O.O.3d 367].

---

[4] The General Assembly has since reduced this percentage.

Here, the appellee required appellant and IBM to determine the value of their property by using depreciated book value. IBM based its book value on manufacturing cost, while appellant was required to base its book value on acquisition cost. This resulted in appellant's property being valued at between six and seven times that of IBM's,[5] even though, for practical purposes, appellant's property is identical to IBM's.

Appellant does not challenge the lawfulness of the valuation of his property. Rather, appellant argues that allowing IBM to determine the value of its property by using manufacturing cost less depreciation, with its concomitant gross undervaluation, without allowing it the same privilege, denies it equal protection.[6] Under the facts of this particular case, we conclude that appellant was denied equal protection of the laws, so we reverse.

States have great discretion in laying taxes; however, the taxing power is subject to the Equal Protection Clause. *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 526. In *Hillsborough* v. *Cromwell* (1946), 326 U.S. 620, the court discussed the application of the Equal Protection Clause to tax cases and said, at page 623:

"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. * * *"

Also, in *Southern Railway Co.* v. *Watts* (1923), 260 U.S. 519, 526, the court spoke on the same subject:

"* * * The rule is well settled that a taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others. *Raymond* v. *Chicago Union Traction Co.* [1907], 207 U.S. 20."[7]

By applying these standards to the present dispute, its resolution becomes obvious. Both IBM and appellant were required to report the value of their property so that the value approximated market value. However, the appellee allowed IBM, a manufacturer-lessor, to report its property in a manner, manufacturing cost less depreciation, which caused it to be grossly undervalued. Furthermore, only a manufacturer, IBM, was allowed to so undervalue its property. Thus, the appellee intentionally and systematically

---

[5] *I.e.,* the value of appellant's computers when based on depreciated acquisition cost rather than depreciated manufacturing cost.

[6] Equal protection is guaranteed by the Fourteenth Amendment to the United States Constitution, and Section 2, Article I of the Ohio Constitution.

It should be noted that appellant does not argue that R.C. 5711.18 is facially unconstitutional; rather, appellant contends that its present application deprives it of equal protection.

[7] Likewise, in *Southland Mall, Inc.* v. *Garner* (C.A. 6, 1972), 455 F. 2d 887, the court said at page 889:

"In order to establish an equal protection violation it is not necessary for a taxpayer to prove that he was overassessed. He may show that his property was assessed at its true value while other property was intentionally undervalued."

treats members of the same class, lessors of equipment, differently because one is a manufacturer. This denied appellant the "right to equal treatment." *Hillsborough* v. *Cromwell, supra.* Further, appellant was discriminated against by the undervaluation of IBM's property. *Southern Railway Co.* v. *Watts, supra.* See, also, *Koblenz* v. *Bd. of Revision* (1966), 5 Ohio St. 2d 214 [34 O.O.2d 424].

Nonetheless, appellee argues that the disparate treatment of IBM and appellant does not violate equal protection. First, appellee correctly states that the different treatment of similarly situated taxpayers does not violate equal protection as long as there is rational basis for that treatment. *Lehnhausen* v. *Lake Shore Auto Parts Co.* (1973), 410 U.S. 356; *Allied Stores of Ohio, Inc.* v. *Bowers, supra,* at 527. Further, appellee argues that there is a rational basis for that treatment because appellant and IBM incurred different costs in securing their respective computers.

This does not justify the disparate treatment here, for, as discussed above, the ultimate end of a tax on true value is a tax on market value. *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals; Grabler Mfg. Co.* v. *Kosydar; Conalco* v. *Bd. of Revision; Meyer* v. *Bd. of Revision;* and *Tele-Media Co.* v. *Lindley, supra.* Consequently, cost figures cannot serve as justification for treating a purchaser-lessor differently from a manufacturer-lessor as each should be taxed on market value.[8]

Based on the foregoing, we hold that a taxpayer who leases equipment is denied equal protection when a competitor, who manufactures and leases essentially identical equipment, is allowed to grossly undervalue its property by reporting the property's value as manufacturing cost less depreciation, and the former is not allowed to value his property in the same manner.

Accordingly, we reverse the decision of the Board of Tax Appeals, and remand this cause in order that appellant may be allowed to report the value of its property in the same manner as IBM.

*Judgment accordingly.*

---

[8] Alternatively, appellee argues that its method of establishing value must be upheld because to use a method other than depreciated book value will cause an administrative nightmare.

We disagree. First, it is questionable whether administrative convenience can justify a denial of equal protection. See, *e.g., Reed* v. *Reed* (1971), 404 U.S. 71. Second, this decision will not result in all similar equipment being given the same value. Rather, the value of all similar equipment must be determined in the same manner. When the value of a manufacturer-lessor's equipment becomes so undervalued that it does not reflect market value, the appellee must either adjust the manner in which the manufacturer establishes value, or risk equal protection challenges from competing purchaser-lessors. We note that other states require manufacturer-lessors to report equipment at its market value instead of manufacturing cost which does not reflect objective market value. See, *e.g., Dept. of Assessments and Taxation* v. *Greyhound Computer Corp.* (1974), 271 Md. 575, 320 A. 2d 40; *State, ex rel. IBM Corp.,* v. *Bd. of Review* (1939), 231 Wis. 303, 285 N.W. 784; *Xerox Corp.* v. *Hennipen* (1976), 309 Minn. 239, 244 N.W. 2d 135; *Xerox Corp.* v. *Bd. of Review* (Iowa 1980), 298 N.W. 2d 416.

W. Brown, Sweeney and C. Brown, JJ., concur.

Celebrezze, C.J., Locher and J. P. Celebrezze, JJ., dissent.

Celebrezze, C.J., dissenting. Although the majority's holding may appear to reach a fair result, I dissent because I feel that the valuation of appellant's property is constitutional.

While the statement in paragraph one of the syllabus may be correct, it also is incomplete. The quoted statement from *Southern Railway Co.* v. *Watts* (1923), 260 U.S. 519, 526, continues: "But, *unless* it is shown that the *undervaluation was intentional and systematic,* unequal assessment *will not* be held to *violate the equality clause.*" (Emphasis added.) This is a critical omission.

Thus, appellant has the burden of showing that the disparity in valuation was intentional and systematic. However, the record fails to establish a systematic or deliberate attempt by appellee to discriminate.

Instead, the taxpayers were treated uniformly. The Tax Commissioner used both of the taxpayers' costs of acquisition in determining the value of the property. In appellant's case, the cost is the amount it paid for the equipment. In IBM's case, the cost used was the manufacturing cost or the amount IBM spent for the equipment. Thus, the same standard, acquisition cost less depreciation, was applied in both cases. When any item is purchased, the price may vary depending upon the circumstances of the sale. Thus, the assessments, based upon the acquisition costs, may vary for the same item.

Although the application of the acquisition cost resulted in disparate assessments, this alone is insufficient to show that the lesser valuation of IBM's equipment was intentional or systematic. Furthermore, appellant has presented a comparison with only one other taxpayer and for the tax years 1970 and 1971. This is not sufficient evidence to show either a systematic or deliberate attempt to discriminate.

This conclusion is supported by the rule that states have great discretion in levying taxes. According to the United States Supreme Court:

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation." *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 U.S. 495, 509.

Thus, we are not bound by a rigid rule of equality of taxation. Our discussion, in *Meyer* v. *Bd. of Revision* (1979), 58 Ohio St. 2d 328 [12 O.O.3d 305], concerning inequality of taxation, is appropriate in this case. According to Justice Holmes' opinion:

"The system of taxation unfortunately will always have some inequality and nonuniformity attendant with such governmental function. It seems that perfect equality in taxation would be utopian, but yet, as a practicality, unattainable. We must satisfy ourselves with a principle of reason that practical equality is the standard to be applied in these matters, and this standard is

satisfied when the tax system is free of systematic and intentional departures from this principle." *Id.* at 335.

According to this rationale, practicality should be considered when perfect equality in taxation is not reasonably attainable. In this case, appellee used the same standard, acquisition cost, for assessing both IBM and appellant. This is a consistent method of assessment and appears to be a practical approach.

Therefore, I conclude that appellant has not established that the valuations in this case constitute intentional or systematic discrimination. "* * * [U]nless it is shown that the undervaluation was intentional and systematic, unequal assessment will not be held to violate the equality clause." *Southern Railway Co., supra,* at 526. Consequently, appellant's assessments are constitutional.

For these reasons, I dissent.

LOCHER and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.