CHRYSLER FINANCIAL COMPANY, L.L.C., N.K.A. DAIMLERCHRYSLER
SERVICES NORTH AMERICA, L.L.C., APPELLANT, v. WILKINS,
TAX COMMR., APPELLEE.

[Cite as *Chrysler Financial Co., L.L.C. v. Wilkins,*
102 Ohio St.3d 443, 2004-Ohio-3922.]

(No. 2003–0233—Submitted April 14, 2004—Decided August 11, 2004.)

———

ALICE ROBIE RESNICK, J.

{¶ 1} This case concerns a claim for a sales tax refund filed by Chrysler Financial Company, L.L.C. ("Chrysler") for bad debts resulting from retail installment contracts that Chrysler purchased from its dealers. Chrysler contends that it is entitled to claim a refund based on these bad debts because it is a vendor and an assignee of the dealers who made the sales. We disagree.

{¶ 2} Retail installment contracts are initially entered into between a dealer handling a Chrysler motor vehicle and its customer to finance the customer's purchase of the motor vehicle. The amount the dealer finances includes the purchase price of the motor vehicle plus sales tax and any extras such as an extended warranty, less the customer's down payment.

{¶ 3} If the retail installment contract meets the guidelines previously agreed to between Chrysler and the dealer, Chrysler accepts assignment of the contract and pays the dealer the full amount owing on the contract. The contract assignment language provides that the dealer assigns its "entire right, title and interest in and to" the retail installment contract to Chrysler, thereby authorizing Chrysler "to do every act and thing necessary to collect and discharge obligations arising out of or incident to this contract and assignment."

{¶ 4} All the retail installment contracts consisted of simple interest loans, and the assignments were made to Chrysler without recourse.

{¶ 5} If a customer fails to make the required installment payments and the loan is deemed uncollectible, Chrysler moves the loan from its retail system to its recovery system. After about six months in the recovery system without collection, the loan is charged off. As part of its recovery efforts, Chrysler repossesses the motor vehicle, if possible, and sells it at auction. After deduction of expenses, the proceeds that Chrysler receives from the auction are applied to the balance of the amount owed by the customer, exclusive of finance charges. The balance that remains uncollected after application of the sale proceeds is considered by Chrysler to be a loss.

{¶ 6} Because the amount financed includes both taxable and nontaxable amounts, Chrysler has to calculate the percentage of the loss representing taxable sales to determine its bad debt for tax purposes. To calculate the percentage of the loss representing a taxable sale, Chrysler divides the amount of the original taxable sale price by the original total cash sales price. The amount of the loss representing taxable sales is then determined by multiplying the amount of the loss by the percentage of the loss representing a taxable sale. Chrysler considers the loss represented by the taxable sale to be its bad debt. The refund amount claimed by Chrysler is determined by multiplying the sales tax rate applicable to each sale by the amount of the bad debt. Chrysler's witness stated that it took the losses for the years at issue, 1997–1999, as a bad-debt deduction on its federal tax return.

{¶ 7} Chrysler holds a vendor's license in Ohio and files Ohio sales tax returns for its direct sales of lease cars and its leasing business. However, Chrysler did not make any of the sales that resulted in the bad debts involved with the refund claim. Chrysler did not pay any sales tax or file any sales tax returns for any of the sales that resulted in the bad debts it is claiming.

{¶ 8} The Tax Commissioner denied Chrysler's claim for a refund, finding that Chrysler was not a vendor or seller but a provider of financing. Chrysler appealed the Tax Commissioner's final determination to the Board of Tax Appeals ("BTA"), which affirmed it. The BTA found that Chrysler was not a vendor within the statutory definition and, therefore, not the proper entity to seek the refund.

{¶ 9} This cause is before the court upon an appeal as of right.

{¶ 10} Chrysler's situation in seeking a refund in this matter under R.C. 5739.121 is analogous to that of the taxpayer in *Key Serv. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 764 N.E.2d 1015. In that case, Key Services Corporation filed its claim under a statute that authorized a refund of a portion of the use tax paid on certain equipment. In discussing how the refund statute should be construed, the court noted that refund provisions for taxes erroneously paid, or paid under erroneous assessments, should be liberally construed. However, when the taxpayer is not seeking the return of an illegal or erroneous payment, the refund claim is more analogous to a claim for exemption and is to be strictly construed. Id. at 15, 764 N.E.2d 1015. Chrysler is not seeking the refund of a tax alleged to be erroneous or illegal. Therefore, its claim for a refund is to be strictly construed, like a claim for exemption.

{¶ 11} The statute at issue, R.C. 5739.121, provides:

{¶ 12} "As used in this section, 'bad debt' means any debt that has become worthless or uncollectible in the time period between a vendor's preceding return and the present return, have [sic] been uncollected for at least six months, and that may be claimed as a deduction pursuant to the 'Internal Revenue Code of 1954' * * *. 'Bad debt' does not include any interest or sales tax on the purchase price, uncollectible amounts on property that remains in the possession of the vendor until the full purchase price is paid, expenses incurred in attempting to collect any account receivable or for any portion of the debt recovered, any accounts receivable that have been sold to a third party for collection, and repossessed property.

{¶ 13} "In computing taxable receipts for purposes of this chapter, a vendor may deduct the amount of bad debts, as defined in this section. The amount deducted must be charged off as uncollectible on the books of the vendor. A deduction may be claimed only with respect to bad debts on which the taxes

pursuant to sections 5739.10 and 5739.12 of the Revised Code were paid in a preceding tax period."

{¶ 14} Chrysler is claiming a refund rather than a bad-debt deduction by virtue of the Tax Commissioner's rule set forth in Ohio Adm.Code 5703–9–44(E), which provides, "In the event that the bad debt deduction exceeds the net taxable sales of the vendor for that period, the tax attributable to the excess amount can only be recovered by refund claim pursuant to sections 5739.07 and 5741.10 of the Revised Code."

{¶ 15} According to R.C. 5739.02(A), "[t]he [sales] tax applies and is collectible when the sale is made, regardless of the time when the price is paid or delivered." Thus, even though the full price of the sale will not be collected by the vendor until sometime in the future, the tax applies and is due on the full price when the sale is made. R.C. 5739.03(B) provides that where the price is to be paid other than at or before the time of delivery of possession, the vendor shall charge the tax "to the account of the consumer, which amount shall be collected by the vendor from the consumer in addition to the price." Even though the vendor will not have collected the full amount of the price from the consumer until sometime in the future, R.C. 5739.03(B) provides that "[s]uch sale shall be reported on and the amount of the tax applicable thereto shall be remitted with the return for the period in which the sale is made, and the amount of the tax shall become a legal charge in favor of the vendor and against the consumer." Thus, for an installment sale, the vendor reports the full sale price on his or her sales tax return to the Department of Taxation and pays the amount of the sales tax due on the price of the sale, even though the vendor may not have collected the sales tax from the customer at the time of the sale.

{¶ 16} If the consumer defaults on paying the full sale price, the vendor will have paid tax to the Department of Taxation on a sale price that will not be collected. However, R.C. 5739.121 permits the vendor to recoup a pro rata portion of the sales tax paid to the Department of Taxation based on the amount of the sale price that is not paid by the consumer.

{¶ 17} The term "vendor" used in R.C. 5739.121 is defined in R.C. 5739.01(C) as including the person "by whom the transfer effected or license given by a sale is or is to be made or given." The definition of "person" in R.C. 5739.01(A) includes "individuals, receivers, *assignees*, trustees in bankruptcy, estates, firms, partnerships, associations, joint-stock companies, joint ventures, clubs, societies, corporations, the state and its political subdivisions, and combinations of individuals of any form." (Emphasis added.)

{¶ 18} Chrysler contends that because R.C. 5739.01(A) defines "person" to include "assignee" and because it is an assignee of the original selling dealer, it is a vendor for purposes of R.C. 5739.121.

{¶ 19} On the other hand, the Tax Commissioner contends that Chrysler is not the vendor, because it does not meet the statutory definition of "vendor." The Tax Commissioner focuses on that portion of the statutory definition of "vendor" in R.C. 5739.01(C) that defines the "vendor" as the person "by whom the transfer effected * * * by a sale is or is to be made."

{¶ 20} We agree with the Tax Commissioner. While the definition of "person" includes "assignee," merely being an assignee does not make the assignee a vendor for the purposes of R.C. 5739.121. R.C. 5739.01(C) defines "vendor" as the person "by whom the transfer effected * * * by a sale is or is to be made." Thus, an assignee, trustee, or any of the other entities included in the definition of "person" set forth in R.C. 5739.01(A) can be a vendor, but only if the entity makes the transfer effected by a sale. The definition of "sale" in R.C. 5739.01(B)(1) includes all "transactions for a consideration in any manner * * * by which title or possession, or both, of tangible personal property, is or is to be transferred." In *Oberlander v. Porterfield* (1971), 28 Ohio St.2d 171, 173, 57 O.O.2d 406, 277 N.E.2d 198, the court looked at the relationship between the definition of "vendor" in R.C. 5739.01(C) and the definition of "sale" in R.C. 5739.01(B), in the context of an auctioneer, and stated:

{¶ 21} "A combined reading of these statutory definitions reveals that the person making the sale is the person who *effects* a transfer of title or possession, or both, of tangible personal property for a consideration. * * * To be a vendor, within the meaning of R.C. 5739.01(C), it is not necessary that one actually transfer title to or possession of tangible personal property. The vendor is the person by whom the transfer is effected." (Emphasis sic.)

{¶ 22} Thus, to be a vendor for purposes of R.C. 5739.121, the person must make the transfer of title or possession effected by the sale, for a consideration. The transfer effected by the sale in this case is the transfer of title or possession from the dealer to the customer. Chrysler did not make any transfer of title or possession of any motor vehicles to any customers being considered here. Chrysler did not become involved until it purchased the retail installment contract from the dealer, which occurred after the sale. Thus, Chrysler does not meet the statutory definition of "vendor" set forth in R.C. 5739.01(C), because it was not the vendor making the sales that gave rise to the bad debts. Therefore, Chrysler is not a vendor entitled to a bad-debt deduction or refund under R.C. 5739.121.

{¶ 23} Chrysler also argues that, by being the assignee of the retail installment contract, it stands in the shoes of the dealer. In *Inter Ins. Exchange of Chicago Motor Club v. Wagstaff* (1945), 144 Ohio St. 457, 460, 30 O.O. 44, 59 N.E.2d 373, the court recognized the general rule that "an assignee * * * of a claim stands in the shoes of the assignor * * * and succeeds to all the *rights and remedies* of the

latter." (Emphasis sic.) Chrysler apparently makes this argument so that it can assert any right the dealer has to a bad-debt deduction.

{¶ 24} Assume, for purposes of discussion, that the assignment of the retail installment contract to Chrysler included an assignment of any claim the dealer had to a bad-debt deduction, that this specific assignment was specified in the general assignment, and that an assignment of such a claim to a deduction could be made. Has Chrysler succeeded to a claim for a bad-debt deduction? To answer that question we must consider whether the dealer had a claim for a bad-debt deduction. If the dealer never had a claim for a bad-debt deduction to assign, Chrysler cannot assert an assignment of such a claim.

{¶ 25} Prior to the sale and assignment of the retail installment contract to Chrysler, the dealer had no claim to a bad-debt deduction, because the dealer had no bad debt. After the retail installment contract was assigned to Chrysler, and the dealer had been paid in full, the dealer could not claim a bad-debt deduction. After the dealer assigned the retail installment contract to Chrysler, the customer's debt to the dealer was paid in full, including any amount owed to the dealer for sales tax. As far as the dealer is concerned, the sale of the retail installment contract to Chrysler produces the same result as if the customer had paid off the contract. Thus, the dealer never suffered any bad debt that it could assert or that Chrysler could assert as the dealer's assignee.

{¶ 26} The plain language of R.C. 5739.121 permits only the vendor that made the sale and remitted the tax to the Department of Taxation to claim a bad-debt deduction. Chrysler, as an assignee of a retail installment contract from the vendor who made the sale, does not meet the requirements for asserting a claim for a bad-debt deduction or refund under R.C. 5739.121.

{¶ 27} Accordingly, we hold that the decision of the BTA was reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

O'CONNOR, J., dissents.

---

**O'DONNELL, J., dissenting.**

{¶ 28} I respectfully dissent. It is undisputed that, for tax purposes, a vendor is authorized by R.C. 5739.121 to deduct certain bad debts from current taxable receipts.

{¶ 29} That statute provides:

{¶ 30} "As used in this section, 'bad debt' means any debt that has become worthless or uncollectible in the time period between a vendor's preceding return and the present return, ha[s] been uncollected for at least six months, and that may be claimed as a deduction pursuant to the 'Internal Revenue Code of 1954' * * *. 'Bad debt' does not include any interest or sales tax on the purchase price, uncollectible amounts on property that remains in the possession of the vendor until the full purchase price is paid, expenses incurred in attempting to collect any account receivable or for any portion of the debt recovered, any accounts receivable that have been sold to a third party for collection, and repossessed property.

{¶ 31} "In computing taxable receipts for purposes of this chapter, a vendor may deduct the amount of bad debts, as defined in this section. The amount deducted must be charged off as uncollectible on the books of the vendor. A deduction may be claimed only with respect to bad debts on which the taxes pursuant to sections 5739.10 and 5739.12 of the Revised Code were paid in a preceding tax period."

{¶ 32} Here, Chrysler Financial Company, L.L.C., which had been assigned the "entire right, title and interest in and to" the vendors' installment contracts, filed a claim for a sales tax refund as a result of bad debts from the retail installment contracts it purchased from dealers that had financed the purchase of new vehicles. The amounts financed included the purchase price and, relevant here, the full sales tax on the purchase price of the vehicles.

{¶ 33} If a customer defaulted on an installment contract, Chrysler Financial would repossess the vehicle and sell it at auction, and any deficit constituted a loss. Chrysler Financial here claims a refund of the sales tax collected by the state on its bad debt.

{¶ 34} The majority asserts that if a dealer never had a claim for refund of the sales tax, Chrysler Financial could not assert an assignment of such a claim based on its status as an assignee of the dealer. However, the assignment here consisted of the dealer's "entire right, title and interest in and to" the installment contract, authorizing Chrysler Financial to "do every act and thing necessary to collect and discharge obligations arising out of or incident to this contract and assignment." This assignment then constitutes an assignment of all of the rights the vendor had pursuant to the contract, not merely the assignment of a right to assert a "claim."

{¶ 35} If the original dealer—i.e., the vendor—had the right to seek a tax refund prior to the assignment of the contract, then, by operation of the assignment, that right to seek a refund transferred to Chrysler Financial. Thus, the right to assert a claim for a tax refund did not disappear merely because the

dealer assigned its "entire right, title and interest in and to" the installment contract, because the assignment included the right to assert a refund claim.

{¶ 36} As the majority notes, "[i]f the consumer defaults on paying the full sale price, the vendor will have paid tax to the Department of Taxation *on a sale price that will not be collected.*" (Emphasis added.) By precluding the vendors' assignees from taking the bad-debt reduction, today's opinion will allow the Department of Taxation to collect and keep the full sales tax on incomplete sales. Thus, preventing assignees from claiming these tax refunds results in the unjust enrichment of the Department of Taxation.

{¶ 37} Accordingly, I would hold that Chrysler Financial may assert its right to the refund pursuant to the dealers' assignment of that right. Therefore, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————

Baker & Hostetler, L.L.P., and Edward J. Bernert; Akerman Senterfitt, David E. Otero, Peter O. Larsen and Cynthia D. Baines, for appellant.

Jim Petro, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellee.