On Application for Rehearing
 

 THOMAS, Judge.
 

 The opinion of July 18, 2008, is withdrawn, and the following is substituted therefor.
 

 Wells Fargo Financial Acceptance Alabama, Inc., DaimlerChrysler Services North America, LLC, Greenpoint Credit, LLC, American Honda Finance Corporation, Wells Fargo Financial Alabama, Inc., and Conseco Finance Corporation (“the credit companies”) financed the sales by various retailers of various items ranging from jewelry to automobiles to mobile homes. Each item was sold on credit pursuant to an installment sales contract between the purchaser and the retailer; that is, the purchaser would pay monthly installments until the purchase price was paid. At the same time the installment sales contracts were executed, the credit companies were assigned those contracts by the retailers. The credit companies paid to the retailers the entire amount financed, which included the entire purchase price of the item and the applicable sales tax due on the sale. The retailers presumably remitted the entire amount of sales tax collected for each purchase to the State Department of Revenue (“the Department”).
 
 [1]
 
 When purchasers defaulted on the installment sales contracts, the credit companies determined that the accounts were uncollectible and “charged off’ the amount remaining due under the contracts on their federal income-tax returns. The credit companies then petitioned the Department for refunds of the sales taxes remitted to the Department by the retailers, relying on the “bad debt” regulation promulgated by the Department, Ala. Admin. Code (Dep’t of Revenue), r. 810-6-4-.01. The Department re
 
 *894
 
 fused to grant the requested refunds, and the credit companies appealed to the Administrative Law Division of the Department.
 

 The appeals relating to Wells Fargo Financial Acceptance Alabama, Inc., Wells Fargo Financial Alabama, Inc., and Conse-co Finance Corporation were consolidated (“the consolidated appeals”); the appeals relating to the other credit companies were held in abeyance awaiting the outcome of the consolidated appeals. After a hearing on the consolidated appeals, an administrative law judge (“ALJ”) entered a judgment upholding the denial of the tax refunds requested by the credit companies in the consolidated appeals. The denials of the refunds requested by the other credit companies were likewise affirmed. The credit companies appealed the ALJ’s judgments to the Montgomery Circuit Court and moved for a partial summary judgment in their favor based on the submission of the record of the administrative proceeding in the consolidated appeals. The circuit court reversed the judgments of the ALJ and ordered that the Department determine the amount of refund due each credit company; the circuit court certified the partial summary judgment concluding that the credit companies were entitled to refunds as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The Department appeals.
 

 Although the order of an ALJ is to be presumed prima facie correct in an appeal of that order in the circuit court, Ala.Code 1975, § 40-2A-9(g)(2), this court’s standard of review does not require that it give deference to either the ALJ’s decision or the circuit court’s judgment. Instead, because this is an appeal from a summary judgment and involves only questions of law, our review of the matter is de novo.
 
 State Dep’t of Revenue v. Garner,
 
 812 So.2d 380, 382 (Ala.Civ.App.2001). Because we are concerned with the application of tax statutes, we must be mindful of the principles governing their construction. “It is well settled that the right to reclaim money voluntarily paid to the state or the counties thereof, as taxes, is a creature of legislative grace .... ”
 
 Lee v. Cunningham,
 
 234 Ala. 639, 642, 176 So. 477, 480 (1937) (opinion on rehearing). Like tax exemptions, tax refunds are to be construed in favor of the taxing authority.
 
 Smith v. Sears, Roebuck & Co.,
 
 672 So.2d 794, 799 (Ala.Civ.App.1995);
 
 see also Ex parte Jefferson Smurfit Corp.,
 
 951 So.2d 659, 665 (Ala.2006) (stating that the right to a franchise-tax refund is a matter of legislative grace).
 

 “ ‘The right of taxation is essential to the existence of all governments, ... and it is never to be presumed that this right is abandoned or surrendered unless it clearly appears that such was the intention. ...’
 
 Stein v. Mayor, Aldermen and Common Council of Mobile,
 
 17 Ala. 234, 239 [ (1850) ]. ‘. ‘Taxation is the rule; exemption the exception.’ ... ” ’
 
 Brown v. Protective Life Insurance Co.,
 
 188 Ala. 166, 168, 169, 66 So. 47 [(1914)].”
 

 State v. Lamson & Sessions Co.,
 
 269 Ala. 610, 614, 114 So.2d 893, 896 (1959).
 

 In order to better understand the questions presented by this appeal, a brief discussion of Alabama law regarding sales tax and the statutory procedure for obtaining a tax refund is necessary. Subject to certain exceptions not applicable here, a sales tax is levied on “every person, firm, or corporation, ... engaged or continuing within this state, in the business of selling at retail any tangible personal property whatsoever .... ” Ala.Code 1975, § 40-23-2(1). Those persons or entities who meet the definition in § 40-23-2(1) are considered “taxpayers.” § 40-23-l(a)(7) (defining taxpayer for purposes of the sec
 
 *895
 
 tion as “[a]ny person liable for taxes hereunder”). Taxpayers must be licensed, § 40-23-6, and must pay the sales tax due on their gross receipts monthly. § 40-23-7(a);
 
 but see
 
 § 40-23-7(d) (permitting quarterly reports for those whose average sales-tax liability is under $200 per month). In addition, a taxpayer must keep records of its “gross sales, gross proceeds of sales, and gross receipts or gross receipts of sales” and any other records necessary to compute the amount of sales tax due. § 40-23-9. The sales tax due on cash sales is to be computed and remitted monthly, § 40-23-7(a), while the sales tax due on credit sales is to be computed on each installment paid to the taxpayer. § 40-23-8. According to § 40-23-8, “in no event shall the gross proceeds of credit sales be included in the measure of the tax to be paid until collections of such credit sales shall have been made.”
 

 Because on some credit sales taxpayers were remitting the sales tax, which was later discovered not to be due because a portion of the purchase price was deemed to be uncollectible, the Department promulgated an administrative regulation that would allow a retailer to seek a refund of, or take a credit on a subsequent sales-tax report for, those sales taxes paid on certain qualifying uncollectible accounts. Ala. Admin. Code (Dep’t of Revenue), r. 801-6-4-.01.
 

 “810-6-4-.01. Accounts Charged Off (Bad Debts) And Repossessions.
 

 “(1) The term ‘bad debt or uncollectible account’ as used in this rule shall mean any portion of the sales price of a taxable item which the retailer cannot collect. Bad debts include, but are not limited to, worthless checks, worthless credit card payments, and uncollectible credit accounts. Bad debts, for sales and use tax purposes, do not include finance charges, interest, or any other nontaxable charges associated with the original sales contract, or expenses incurred in attempting to collect any debt, debts sold or assigned to third parties for collection, or repossessed property.
 

 [[Image here]]
 

 “(3) The term ‘credit sale’ shall include all sales in which the terms of the sale provide for deferred payments of the purchase price. Credit sales include installment sales, conditional sales contracts, and revolving credit accounts.
 

 “(4) Sections 40-23-8 and 40-23-68(e), Code of Ala.1975, require that any person taxable under the law having cash and credit sales may report the cash sales, and the retailer shall include in each report all credit collections made during the preceding tax reporting period and shall pay the taxes due on the cash sales and the credit collections at the time of filing the tax report, but in no event shall the gross proceeds of credit sales be included in the measure of tax to be paid until collections of the credit sales have been made.
 

 “(5) In the event a retailer reports and pays the sales or use tax on credit accounts which are later determined to be uncollectible, the retailer may take a credit on a subsequent tax report or obtain a refund for any tax paid with respect to the taxable amount of the unpaid balance due on the uncollectible credit accounts within three years following the date on which the accounts were charged off as uncollectible for federal income tax purposes.
 

 “(6) If a retailer recovers in whole, or in part, amounts previously claimed as bad debt credits or refunds, the amount collected shall be included in the first tax report filed after the collection occurred. (Sections 40-23-8 and 40-23-68(e))
 

 [[Image here]]
 

 
 *896
 
 The procedure for obtaining a tax refund is governed by Ala.Code 1975, § 40-2A-7(c), which is a part of the Taxpayers’ Bill of Rights, codified at Ala.Code 1975, § 40-2A-1 et seq. Our supreme court has held that, due to the fact that a tax refund is a matter of legislative grace, “strict compliance with the [Taxpayers’ Bill of Rights] is the exclusive means by which to obtain a ... tax refund.”
 
 Ex parte Jefferson Smurfit Corp.,
 
 951 So.2d at 665 (applying the Taxpayers’ Bill of Rights to a petition for the refund of franchise taxes). A petition for a refund may be filed by a “taxpayer.” § 40-2A-7(c)(l). A taxpayer, for purposes of the Taxpayers’ Bill of Rights, is defined as “[a]ny person subject to or liable for any state or local tax; any person required to file a return with respect to, or to pay, or withhold and remit any state or local tax or to report any information or value to the department .... ” Ala.Code 1975, § 40-2A-3(23). In order to be entitled to a refund, the taxpayer must prove the “overpayment of tax or other amount erroneously paid to the department ....” § 40-2A-7(c)(l). In addition, the statute requires that
 

 “[i]n the case of a petition for refund of sales ... taxes
 
 pursuant to Chapter 23, ... the petition shall be filed jointly by
 
 the taxpayer who collected and paid over the tax to the department
 
 and the eonsumer/purchaser who paid the tax to the taxpayer. A direct petition may be filed by the taxpayer if the taxpayer never collected the tax from the consumer/purchaser, or if the tax has been credited or repaid to the consumer/purchaser by the taxpayer.”
 

 § 40-2A-7(c)(l) (emphasis added).
 

 As noted above, the credit companies unsuccessfully petitioned the Department for refunds of the sales taxes paid by the retailers on the accounts assigned to the credit companies that became uncollectible. The credit companies appealed the Department’s decision to the Department’s Administrative Law Division, and the ALJ affirmed the Department’s decision. The credit companies then appealed the ALJ’s decision to the circuit court, which reversed the decision of the ALJ.
 

 The credit companies successfully argued in the circuit court that general assignment law should govern the question whether the retailers’ rights to refunds under the “bad debt” regulation were assigned. The circuit court held that because the “bad debt” regulation was silent with regard to whether the right to a refund could be assigned, the common-law principles applicable to assignments governed the question. Based on those principles, the circuit court concluded that the right to a refund under the “bad debt” regulation was “freely assignable.” The Department argued that, even if the right to receive a refund under the “bad debt” regulation was assignable, the retailers did not have the right to assign that particular right at the time the installment sales contracts were assigned. The credit companies responded to this argument by arguing that general assignment law permits the assignment of nonvested or contingent rights. The circuit court agreed with the credit companies and concluded that they were entitled to seek refunds under the “bad debt” regulation. In addition, the circuit court concluded that two credit companies, namely DaimlerChrysler and American Honda, were retailers themselves and were therefore entitled to receive refunds pursuant to the “bad debt” regulation on that basis as well.
 

 We first address the circuit court’s determination that two of the credit companies, DaimlerChrysler and America Honda, were retailers in their own right and were thus entitled to pursue refunds under the “bad debt” regulation on that
 
 *897
 
 basis. As the Department points out, the record does not support the conclusion that any of the credit companies are retailers. The only evidence submitted to the circuit court was the administrative record in the consolidated appeals. In the transcript of the hearing before the ALJ, Wells Fargo Financial Acceptance Alabama, Inc., and Wells Fargo Financial Alabama, Inc., both admitted that they are not retailers and that they did not remit sales taxes to the Department. Although references to DaimlerChrysler and America Honda in pleadings from both the credit companies and the Department indicate that those two credit companies might be retailers or that they might remit sales taxes to the Department in other situations, the statements of counsel in a pleading or brief are not evidence.
 
 Carver v. Foster,
 
 928 So.2d 1017, 1025 (Ala.2005);
 
 Fleming v. Copeland,
 
 210 Ala. 389, 391, 98 So. 128, 129 (1923); and
 
 Jackson v. State Farm Fire & Cas. Co.,
 
 999 So.2d 499 (Ala.Civ.App.2008). Insofar as the circuit court’s judgment in favor of the credit companies is grounded on this particular finding, we must reverse that judgment.
 

 The Department argues that the credit companies are not entitled to refunds because they are not taxpayers under the sales-tax statute. The record contains no evidence establishing that the credit companies are retailers, and they admittedly did not remit to the Department the sales taxes that they seek to have refunded.
 
 [2]
 
 The “bad debt” regulation permits a
 
 retailer
 
 to seek a refund (or a credit on future sales-tax reports) of any sales taxes collected and remitted on qualified uncollectible accounts. The term “retailer” is not defined in the regulation or the sales-tax statute; however, the term “retail sale” is defined, in part, as “[a]ll sales of tangible personal property except those above defined as wholesale sales,” § 40-23-l(a)(10), and, therefore, a reasonable definition of the term “retailer” in the sales-tax context would be “a person who makes retail sales.” The Department says that the credit companies are not retailers. Thus, the Department reasons, the credit companies do not have standing as taxpayers or retailers to seek refunds of the sales taxes paid.
 

 In response, the credit companies argue that the assignment of rights under the installment sales contracts also served to assign to the credit companies the rights the retailers would have had to refunds under the “bad debt” regulation. They defend this position by relying on general assignment principles. In essence, the credit companies rely on the principle that, as assignees, they step into the shoes of the retailers and that they are then possessed of the same rights, benefits, and remedies that the retailers possessed at the time of the assignments.
 
 See, generally, Green Tree Fin. Corp. v. Channell,
 
 825 So.2d 90, 95 (Ala.2002);
 
 Nissan Motor Acceptance Corp. v. Ross,
 
 703 So.2d 324, 326 (Ala.1997).
 

 Other states have considered similar arguments under their sales-tax schemes, and several have concluded that the general laws pertaining to assignments cannot prevail over the principles governing the statutory construction of tax statutes.
 
 *898
 

 Household Retail Servs., Inc. v. Commissioner of Revenue,
 
 448 Mass. 226, 232, 859 N.E.2d 837, 842 (2007);
 
 DaimlerChrysler Servs. N. America, LLC v. Commissioner of Revenue Servs.,
 
 274 Conn. 196, 214-15, 875 A.2d 28, 39 (2005);
 
 DaimlerChrysler Servs. N. America, LLC v. State Tax
 
 Assessor, 817 A.2d 862, 866 (Maine 2003);
 
 SunTrust Bank, Nashville v. Johnson,
 
 46 S.W.3d 216, 226-27 (Tenn.Ct.App.2000);
 
 Department of Revenue v. Bank of America, N.A.,
 
 752 So.2d 637, 643 (Fla.Dist.Ct.App.2000); and
 
 Citifinancial Retail Servs. Div. of Citicorp Trust Bank, FSB v. Weiss,
 
 372 Ark. 128, 271 S.W.3d 494 (2008);
 
 but see Puget Sound Nat’l Bank v. State Dep’t of Revenue,
 
 123 Wash.2d 284, 287-93, 868 P.2d 127, 129-33 (1994) (discussing the law regarding assignments and determining that the tax attribute of “making sales at retail” was assigned to the bank through the assignment of the installment contracts from automobile dealers). Although the language of the several statutes and regulations addressed in those cases is not identical to the language of our sales-tax statute or our “bad debt” regulation, the courts based their conclusions on the fact that refunds or tax credits are a matter of legislative grace and should be construed in favor of the taxing authority, not the entity seeking the refund. We adhere to those same principles, as noted above.
 
 See Ex parte Jefferson Smurfit Corp.,
 
 951 So.2d at 665;
 
 Lee v. Cunningham,
 
 234 Ala. at 642, 176 So. at 480; and
 
 Smith v. Sears, Roebuck & Co.,
 
 672 So.2d at 799. As explained by the Connecticut Supreme Court, the legislature’s silence regarding whether a tax credit for bad debts could be assigned under Connecticut law could not be read as permission for such an assignment “[bjecause the right to assign the credit would expand the class to whom the credit is available” and because exemptions from taxation are to be strictly construed.
 
 DaimlerChrysler Servs. N. America, LLC,
 
 274 Conn. at 214, 875 A.2d at 38.
 

 The fact that Alabama’s “bad debt” regulation is not a statute and is instead an administrative regulation does not negate the overriding principles that guide us to narrowly construe statutes providing for tax exemptions, credits, and refunds, because “ ‘regulations are regarded as having the force of law and, therefore, become a part of the statutes authorizing them.’ ”
 
 Ex parte Wilbanks Health Care Servs., Inc.,
 
 986 So.2d 422, 425 (Ala.2007) (quoting
 
 Hand v. State Dep’t of Human Res.,
 
 548 So.2d 171, 173 (Ala.Civ.App.1988)). In addition, “ ‘[a]n agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ ”
 
 Mobile County Pers. Bd. v. Tillman,
 
 751 So.2d 517, 518 (Ala.Civ.App.1999)
 
 (quoting Ferlisi v. Alabama Medicaid Agency,
 
 481 So.2d 400, 403 (Ala.Civ.App.1985)). The Department construes the right to pursue a refund under the “bad debt” regulation narrowly, providing that
 
 retailers
 
 — who are taxpayers under our sales-tax scheme — are the only entities permitted to seek a refund. We note that the Taxpayers’ Bill of Rights supports the Department’s construction of the “bad debt” regulation, because it requires that a petition for a refund of the sales tax be filed jointly by the consumer/purchaser and “the taxpayer
 
 who collected and paid over the tax to the department”
 
 or by the taxpayer alone if the taxpayer has refunded or credited the sales tax paid by the purchaser/consumer or if the purchaser/consumer has never paid the sales tax. § 40-2A-7(c)(1) (emphasis added). Thus, it appears that the Taxpayers’ Bill of Rights does not recognize the credit companies, who are
 
 not
 
 taxpayers who remitted the sales tax to the Department, as taxpayers for the purpose of seeking a refund of the sales
 
 *899
 
 tax.
 
 Id.; see also Ex parte Jefferson Smurfit Corp.,
 
 951 So.2d at 665 (stating that strict compliance with the Taxpayers’ Bill of Rights is required to obtain a tax refund). Thus, permitting the assignment of the right to a refund under the “bad debt” regulation would run afoul of the language in the regulation, the Department’s reasonable construction of that regulation, the principles requiring narrow construction of statutes permitting tax refunds, and the language of the Taxpayers’ Bill of Rights. We conclude, then, that the right to a refund under the “bad debt” regulation may not be assigned.
 

 Even assuming that the right to a refund under the “bad debt” regulation was assignable, however, we cannot agree that the credit companies are entitled to refunds. The credit companies argue that the fact that the retailers’ rights to refunds under the “bad debt” regulation were contingent does not prevent their assignment. Although we agree that contingent rights may be assigned,
 
 see Broadwell v. Imms,
 
 14 Ala.App. 437, 441, 70 So. 294, 295 (1915) (“It is well settled that contingent rights are assignable at law when coupled with a present interest in the assignor.”), the credit companies’ argument is still flawed.
 

 In each transaction, at the time of the assignment of the installment sales contract and all the rights thereunder, the retailer received the full purchase price and all the sales tax due on the retail sale. No other payments were due to the retailer from the purchaser or the credit company. The retail sale, as far as the retailer was concerned, was concluded. The retailer was required to report the proceeds from that retail sale and to compute and remit the sales tax due on that retail sale on its monthly sales-tax report. §§ 40-23-7
 
 &
 
 -8. The retailer, at the time of the assignment of the installment sales contract, did not have the potential for and would never have the potential for an un-collectible account arising from that reported retail sale. The sales tax collected on that retail sale and remitted to the Department was not an overpayment of tax, because sales tax was due on the entire purchase price when it was paid to the retailer. §§ 40-23-7 & -8. The retailer’s “right” to a refund under the “bad debt” regulation was not a contingent right that could be assigned; it was a right that never came into being and would never come into being. The retailer would never qualify for a refund under the “bad debt” regulation because it did not pay sales tax on installments due on a credit account; instead, it received the entire purchase price at the time of the retail sale, which required the payment of all sales tax due at that time.
 
 See Department of Revenue v. Bank of America, N.A.,
 
 752 So.2d at 642;
 
 In re Petition of General Elec. Capital Corp.
 
 (DTA No. 816785, Dec. 27, 2001) (N.Y. Tax App. Trib. 2001) (not published);
 
 see also
 
 29 Richard A. Lord,
 
 Williston on Contracts
 
 § 74:1, at 206 (4th ed. 2003) (stating, in a discussion of assignments of a chose in action, that “the assignee acquires rights similar to those of the assignor, and is put in the same position with reference to those rights as that in which the assign- or stood at the time of the assignment”).
 

 In
 
 Chrysler Financial Co. v. Wilkins,
 
 102 Ohio St.3d 443, 812 N.E.2d 948 (2004), the Ohio Supreme Court discussed this same situation. Although not necessary to its conclusion that Chrysler was not entitled to the bad-debt deduction or a refund under the Ohio statute, the court’s discussion is nonetheless apt:
 

 “Assume, for purposes of discussion, that the assignment of the retail installment contract to Chrysler included an assignment of any claim the dealer had to a bad-debt deduction, that this specific assignment was specified in the gener
 
 *900
 
 al assignment, and that an assignment of such a claim to a deduction could be made. Has Chrysler succeeded to a claim for a bad-debt deduction? To answer that question we must consider whether the dealer had a claim for a bad-debt deduction. If the dealer never had a claim for a bad-debt deduction to assign, Chrysler cannot assert an assignment of such a claim.
 

 “Prior to the sale and assignment of the retail Installment contract to Chrysler, the dealer had no claim to a bad-debt deduction, because the dealer had no bad debt. After the retail installment contract was assigned to Chrysler, and the dealer had been paid in full, the dealer could not claim a bad-debt deduction. After the dealer assigned the retail installment contract to Chrysler, the customer’s debt to the dealer was paid in full, including any amount owed to the dealer for sales tax. As far as the dealer is concerned, the sale of the retail installment contract to Chrysler produces the same result as if the customer had paid off the contract. Thus, the dealer never suffered any bad debt that it could assert or that Chrysler could assert as the dealer’s assignee.”
 

 Wilkins,
 
 102 Ohio St.3d at 448, 812 N.E.2d at 952.
 

 Similar reasoning was provided by the New York Tax Appeals Tribunal:
 

 “However, at no time did the Retail Vendor assign a right to apply for a refund premised on the existence of an uncollectible receipt on which sales and use tax had already been paid, because none existed at the time of the assignment. Nor, as a result of the financing arrangement, could the Retail Vendor ever have an uncollectible receipt which would give rise to the right to apply for a refund which might have been assigned to petitioner. On remittance of the tax, the Retail Vendor discharged its obligation as trustee arising from its collection of the sales from its customers. In addition, it received payment in full for the receipts from its sales of tangible personal property. Therefore, once the Retail Vendor assigned the credit account to petitioner and received payment therefor, the Retail Vendor had no basis for claiming a refund based on an uncollectible receipt.
 

 “We think it is important to note that any right to apply for a refund of sales tax arises, if at all, from the Tax Law and is based on the relationship of the refund applicant to the underlying transaction and the obligation for collection/payment of tax.
 

 “Thus, petitioner did not obtain the right to apply for a credit or refund pursuant to Tax Law § 1132(e) as the result of the assignment of the account by the Retail Vendor.”
 

 In re Petition of General Elec. Capital Corp.
 
 (DTA No. 816785, Dec. 27, 2001) (N.Y. Tax App. Trib. 2001) (not published).
 

 We therefore conclude that the credit companies could not be assigned the right to the retailers’ refunds under the “bad debt” regulation because allowing general assignment principles to permit an expansion of the entities permitted to seek a refund of sales taxes under both the “bad debt” regulation and the Taxpayers’ Bill of Rights would run afoul of the long-standing principle requiring narrow construction of statutes permitting tax refunds. In addition, even if that right were assignable, the credit companies were not assigned the right to petition for a tax refund under the “bad debt” regulation because the retailers never had and would never have such a right. Accordingly, we reverse the partial summary judgment in favor of the credit companies and remand the cause for fur
 
 *901
 
 ther proceedings consistent with this opinion.
 

 OPINION OF JULY 18, 2008, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . In the administrative hearing on this matter, the Department refused to concede that the retailers had paid the sales tax due on the retail sales because it had not audited the retailers. However, for purposes of this opinion, we will presume that the retailers paid the applicable sales tax. The difficulty of determining whether sales tax was paid by a retailer in a situation in which a credit company later seeks a refund of the sales tax after default by the purchaser has been considered by other courts when deciding whether a credit company should be permitted to seek a refund of the state sales tax.
 
 See, generally, General Elec. Capital Corp. v. New York Div. of Tax Appeals,
 
 2 N.Y.3d 249, 255-56, 810 N.E.2d 864, 868, 778 N.Y.S.2d 412, 416 (N.Y.2004); and
 
 DaimlerChrysler Servs. N. America, LLC v. State Tax Assessor,
 
 817 A.2d 862, 866 n. 3 (Maine 2003).
 

 [2]
 

 . The record contains the following stipulation: " that American Honda Finance Corporation ('Honda') and DaimlerChrysler Services North America LLC ('Chrysler'), are taxpayers and that they remit sales tax to the State of Alabama; however, neither Honda nor Chrysler remitted the sales tax at issue in these cases.” As will be explained in detail in the text of this opinion,
 
 infra,
 
 the fact that DaimlerChrysler and American Honda have remitted sales taxes to the Department in relation to other sales does not entitle them to a refund in this particular set of circumstances.