HOME DEPOT USA, INC., APPELLANT, *v*. LEVIN, TAX COMMR., APPELLEE.

[Cite as *Home Depot USA, Inc. v. Levin*, 121 Ohio St.3d 482, 2009-Ohio-1431.]

*Taxation — Sales tax — R.C. 5739.121 — "Bad debt" deduction — Refund not available to vendor when vendor makes sale on credit and consumer defaults, but vendor does not charge off debt as uncollectible on vendor's own books — In credit card purchase, consumer buys from vendor but finance company carries debt on its books — Finance company, not vendor, bears risk of default and writes off bad debt.*

(No. 2008-1182 — Submitted February 18, 2009 — Decided April 2, 2009.)

APPEAL from the Board of Tax Appeals, Nos. 2006-M-206 and 2006-M-207.

_____

**PFEIFER, J.**

{¶ 1}  In this case, the Home Depot USA, Inc. ("Home Depot") appeals the determination by the Board of Tax Appeals ("BTA") that Home Depot was not entitled to a refund of sales taxes pursuant to R.C. 5739.121's "bad debt" deduction.  R.C. 5739.121 authorizes a "bad debt" deduction where a vendor made sales on credit but the purchaser subsequently defaulted.  However, R.C. 5739.121 requires that the bad debts "be charged off as uncollectible *on the books of the vendor.*" (Emphasis added.)  We agree with the BTA that since separate finance companies carried the debt at issue, Home Depot did not qualify for the deduction under the plain language of R.C. 5739.121.

**Factual and Procedural Background**

{¶ 2}  These cases originated as sales-tax refund claims filed with the Tax Commissioner on January 30 and February 2, 2004.  The claims seek refunds for the periods January 1, 1998, through December 31, 2000, and January 1, 2001, through July 31, 2003.  The Tax Commissioner's determination describes the transactions at issue as involving Home Depot "team[ing] with a third party

financial institution to manage its private label credit card function," whereby the financial institution "finances the customer's purchase, less a [service fee] charged to Home Depot." The finance companies in this case were affiliates of GE Capital Corporation (referred to collectively as "GE"). Home Depot argued to the commissioner that the service fee charged to Home Depot by GE consisted, in part, of a "bad-debt loss factor." Because the fee is written off by Home Depot for federal income tax purposes, Home Depot contended that it was entitled to a bad-debt deduction on sales to customers who used the Home Depot third-party private-label credit card.

{¶ 3} The deduction authorized by R.C. 5739.121 reduces a vendor's "taxable receipts" for a current sales-tax period by the amount of sale price the vendor (1) reported on an earlier sales-tax return but (2) could not subsequently collect. The vendor thereby recovers the amount of sales tax it previously paid in proportion to the amount of the sale price that could not be collected. See *Chrysler Fin. Co., L.L.C. v. Wilkins*, 102 Ohio St.3d 443, 2004-Ohio-3922, 812 N.E.2d 948, ¶ 16 ("R.C. 5739.121 permits the vendor to recoup a pro rata portion of the sales tax paid  * * * based on the amount of the sale price that is not paid by the consumer"). If the vendor neglects to claim the offset against sales during the current period, it can obtain the deduction through a refund claim pursuant to R.C. 5739.07. Ohio Adm.Code 5703-9-44(E).

{¶ 4} The Tax Commissioner evaluated the claims and found that although Home Depot did deduct the credit card service fee on its federal tax return, Home Depot did not "incur the bad debt expense and deduct this expense." According to the commissioner, the financial institution — not Home Depot itself — writes the account off for federal tax purposes. Home Depot's federal deduction is not a "bad debt" deduction, but an "other" deduction for business expense. For that reason, the commissioner denied the refunds, and Home Depot appealed the determinations to the BTA.

2

**{¶ 5}** At the BTA hearing, Home Depot presented several exhibits and the testimony of four witnesses. The evidence showed that Home Depot contracted with GE affiliates to make financial services available to customers in the form of "private label" credit cards, i.e., Home Depot-specific credit cards. The testimony confirmed that compensation from Home Depot to GE consisted of the service fee, also known as the merchant discount, which was simply a percentage of the sale transaction that GE retained when it paid the sale price plus sales tax to Home Depot. Home Depot then remitted the sales taxes to the state. The evidence also confirmed that GE bore the risk of loss, wrote the bad debt off its books, and took the federal bad-debt deduction when customers defaulted.

**{¶ 6}** In preparing the refund claim, an accounting firm prepared documents that determined the amounts of bad debt written off by the finance companies that related to Ohio sales on which sales tax had been remitted. The exhibits consist of a printed version of schedules obtained from the finance companies. They purport to document the amount of bad debt related to Ohio taxable sales. That bad debt formed the basis of Home Depot's refund claim.

**{¶ 7}** On May 20, 2008, the BTA issued its decision, holding that "Home Depot is paid the full purchase price (less [service fee]), plus sales tax, which tax it then remits to the state of Ohio." Under these circumstances, "the 'bad debt' was never Home Depot's, as when the transaction occurred, the vendor was paid in full." As a result, "even if a consumer ultimately defaults, the default occurs after the transaction leaves Home Depot." Accordingly, the BTA affirmed the commissioner's denial of the refunds. Home Depot appealed to this court, and we now affirm.

### Law and Analysis

*R.C. 5739.121*

**{¶ 8}** R.C. 5739.121 provides:

{¶ 9}   "(A) As used in this section, 'bad debt' means any debt that has become worthless or uncollectible in the time period between a vendor's preceding return and the present return, has been uncollected for at least six months, and that may be claimed as a deduction pursuant to the 'Internal Revenue Code of 1954' 68A Stat. 50, 26 U.S.C. 166, as amended, and regulations adopted pursuant thereto, or that could be claimed as such a deduction if the vendor kept accounts on an accrual basis. * * *

{¶ 10} "(B) In computing taxable receipts for purposes of this chapter, a vendor may deduct the amount of bad debts.  The amount deducted must be charged off as uncollectible on the books of the vendor. A deduction may be claimed only with respect to bad debts on which the taxes pursuant to sections 5739.10 and 5739.12 of the Revised Code were paid in a preceding tax period."

{¶ 11} The key phrase in the statute for purposes of this case is "The amount deducted must be charged off as uncollectible on the books of the vendor."  In *Chrysler*, we rejected a finance company's attempt to obtain refunds based on the bad-debt deduction; we noted that the statute in plain terms afforded relief to the "vendor," not to the finance company.  Id., 102 Ohio St.3d 443, 2004-Ohio-3922, 812 N.E.2d 948, at ¶ 20.  We also noted that the vendor in that case – the car dealer – would receive payment from the finance company and assign the purchase contract to the finance company before the customer defaulted, with the result that "the dealer never suffered any bad debt that it could assert or that [the finance company] could assert as the dealer's assignee."  Id. at ¶ 25.

{¶ 12} This case presents similar facts with one notable difference:  it is the vendor, Home Depot, who seeks the refunds rather than the finance companies that extended credit to Home Depot's customers.  Home Depot contends that it qualifies for the bad-debt deduction because the service fees it paid to the finance companies included an increment designed to cover any bad-debt overhead that the finance companies might incur.

{¶ 13} But this refund claim fares no better than the one at issue in *Chrysler*. R.C. 5739.121 conditions a vendor's entitlement to a bad-debt deduction on *the vendor* writing off a debt on *the vendor's* own books. The evidence shows that GE pays Home Depot, as vendor, the sale price plus sales tax (minus any service fees applicable to the transaction) and that the consumer then owes the sale price and sales tax *not* to Home Depot, but to *GE*. GE therefore carried the consumer debt on its own books and, when debts had become uncollectible, it wrote those debts off on its own books and claimed a federal bad-debt deduction.

{¶ 14} Home Depot seeks to broaden the scope of the statute by advocating a "liberal construction" of R.C. 5739.121 in its favor. It cites *Phoenix Amusement Co. v. Glander* (1947), 148 Ohio St. 592, 36 O.O. 224, 76 N.E.2d 605. But we have held that *Phoenix Amusement*, although providing for a liberal construction of refund *procedures*, does not eclipse the strict-construction principle that applies to the *substantive* law of a tax reduction. See *Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 15, 764 N.E.2d 1015; *Chrysler*, 102 Ohio St.3d 443, 2004-Ohio-3922, 812 N.E.2d 948, ¶ 10. It follows that *Phoenix Amusement* does not support Home Depot's liberal construction of the statute in this case.

{¶ 15} Nor do we find Home Depot's "economic realities" argument persuasive. Home Depot contends that because its contract with GE is intended to build the cost of bad-debt overhead into the service fees, Home Depot is actually bearing the economic burden of the bad debt. But that mischaracterizes the nature of the contracts.

{¶ 16} The essence of the transactions lies in Home Depot employing GE to act as lender to Home Depot's customers. In doing so, Home Depot deliberately decided against extending credit to those customers itself. By hiring a lender to extend credit, Home Depot avoided having to deal with its customers

as debtors – it avoided (1) evaluating customer creditworthiness, (2) maintaining reserves to cover bad debt, and (3) dealing with various regulations that apply to lending and collecting. Although one Home Depot witness stated that Home Depot suffered the loss by paying a service fee, other testimony explicitly acknowledged the obvious fact that the lenders, not Home Depot, assumed the risk of loss. Indeed, Home Depot specifically rejected a recourse arrangement with GE that would have allowed the latter to recover bad-debt losses from Home Depot. Thus, Home Depot no more bears the economic burden of customer default on a private-label credit card transaction than it does on an ordinary credit card deal (where, as the record shows, it also pays a service fee, and usually a greater one).

{¶ 17} Because the statute's plain language limits the bad-debt deduction to a vendor that writes the debt off its own books, Home Depot is not entitled to the deduction in this case.

*Constitutional Issues*

{¶ 18} Home Depot's constitutional arguments also fail. First, Home Depot contends that the guarantee of equal protection in the United States and Ohio Constitutions require that it be treated the same as those vendors who themselves extend credit to their customers. Under the statute, the latter qualify for the bad-debt deduction.

{¶ 19} This argument fails because vendors who extend credit themselves are not, with respect to bad debt, similarly situated to vendors like Home Depot, who hire financial institutions to extend credit. That is so because, as already discussed, vendors that extend credit themselves assume the risk of loss along with the other burdens of lending and collecting. As the testimony in this case establishes, Home Depot avoided such burdens when it hired GE to issue private-label credit cards. Quite simply, there is no requirement of equal treatment of differently situated persons. See *GTE N., Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-

6

Ohio-2984, 770 N.E.2d 65, ¶ 22 ("the Equal Protection Clause 'does not require things which are different in fact * * * to be treated in law as though they were the same' "), quoting *Tigner v. Texas* (1940), 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124.

{¶ 20} Neither *Boothe Fin. Corp. v. Lindley* (1983), 6 Ohio St.3d 247, 6 OBR 315, 452 N.E.2d 1295, nor *MCI Telecomm. Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 625 N.E.2d 597, is apposite. *Boothe* involved differing valuation methods for the same type of personal property held for leasing, depending on whether the property was being held by a manufacturer or a nonmanufacturer. According to this court, the method the manufacturer/taxpayer was permitted to use led to its property being "grossly undervalued." Id. at 249, 6 OBR 315, 452 N.E.2d 1295. In other words, *Boothe* found a violation of equal protection when different valuation methods applied to different taxpayers and the difference in methods bore no reasonable relationship to actual differences in value, nor did they rationally relate to relevant differences in the nature of the taxpayers' businesses. This case does not present such facts.

{¶ 21} In *MCI*, this court found that the Tax Commissioner had assessed property tax against a facilities-based long-distance service provider at a different (and higher) assessment percentage than the percentage applied to resellers engaged in providing long-distance service, thereby violating equal protection. Id., 68 Ohio St.3d at 200-201, 625 N.E.2d 597. Later in *GTE N.*, 96 Ohio St.3d 9, 2002-Ohio-2984, 770 N.E.2d 65, we acknowledged that changes in the tax statutes and public-utilities regulations had eclipsed *MCI*'s rationale. Id. at ¶ 31-38. To the extent that *MCI* has any continuing validity, it is distinguishable from the present case in the same way that *Boothe* can be distinguished: a vendor that extends credit to its own customers is not similarly situated, with respect to bad debts, to a vendor that hires financial institutions to extend credit to its customers and thereby assume the risk of bad-debt loss on its behalf.

**{¶ 22}** Second, denying Home Depot a bad-debt deduction does not violate due process. Here, Home Depot argues that denying the deduction to vendors who hire financial institutions to extend credit lacks any rational basis other than allowing the state to unjustly enrich itself at Home Depot's expense.

**{¶ 23}** That argument fails because the guarantee of due process does not require that the state allow a bad-debt deduction as a means of preventing an "unjust enrichment." Home Depot cites no authority – and we are not aware of any – that entitles a vendor to a bad-debt deduction absent statutory authorization. The sales tax is levied with respect to a consummated sale, and the subsequent default by a consumer on a debt does not undo the event (the sale) that triggered the tax obligation. It follows that the bad-debt deduction in R.C. 5739.121 constitutes an act of pure legislative grace that extends only to those persons and situations described in the statute – and, as already discussed, the differing treatment of a vendor that extends credit itself and a vendor that hires a finance company to extend credit fully comports with equal protection. R.C. 5739.121 does not violate the constitution.

## Conclusion

**{¶ 24}** For all the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Thompson Hine, L.L.P., and Gregory J. Gawlik; and Gibson, Dunn & Crutcher, L.L.P., Randy M. Mastro, and Jennifer H. Rearden, for appellant.

Richard Cordray, Attorney General, and Damion M. Clifford, Assistant Attorney General, for appellee.

_____